[No. 1664. Decided April 23, 1896.]

AMOS BROWN *et ux., Respondents,* v. WILLIAM CARKEEK *et al., Appellants.*

WHARVES — APPURTENANCES — LEASE OF WATER LOT AND WHARF — EXTENSION BY TENANT OVER TIDE LANDS — RECOVERY BY LANDLORD.

A wharf is not land within the rule that land cannot pass as appurtenant to land; and tide flats may pass as appurtenant to a wharf, if necessary to its use.

A lease of a water lot with the appurtenances, containing a provision that all docks, wharves, buildings and improvements whatsoever which shall be erected by the lessee shall become the property of the lessor at the expiration of the lease, will cover a wharf erected by the lessee in connection with the lot, so that at the expiration of the lease the wharf and buildings will revert to the lessor, although the wharf extends beyond the limits of the lessor's lot and upon tidelands not owned by him.

Appeal from Superior Court, King County.—Hon.
T. J. HUMES, Judge.    Affirmed.

*Lindsay, King & Turner (John Arthur,* of counsel),
for appellants.

*White, Munday & Fulton,* for respondents.

The opinion of the court was delivered by

ANDERS, J.—On April 21, 1887, the plaintiffs and
respondents made and executed their lease in writing,
whereby they demised and let to Elisha P. Ferry
and John H. McGraw lot 5 in block C of A. A. Den-
ny's first addition to the city of Seattle, with the ap-
purtenances.    Subsequently said Ferry and McGraw
assigned all their interest in the lease and the term
created thereby to one Kittenger, who, in March, 1889,
assigned to the defendants and appellants, Carkeek
and Nicholas.    This block C. was laid out on the
water front of Seattle and was bounded on the north,
east and south by regularly laid out streets, and on
the west by the waters of Elliott's Bay.    An alley ran
north and south through said block.    Lot 5 was also
bounded on the west by the bay.    On June 6, 1889,
the wharf on lot 5, and that extending westerly from
it, and the buildings thereon, were destroyed by fire.
Soon thereafter the wharf was reconstructed by appel-
lants, who had succeeded to the interests of the original
lessees, covering lot 5 and extending out to deep water,
and appellants held the same and paid the stipulated
rent down to the expiration of the lease.    The recon-
structed wharf was erected for the most part upon the
old piles, but was extended further out into the water.
The term specified and created by the lease expired on
March 7, 1893.    At that time the defendants and ap-
pellants offered to surrender possession of lot 5 to the

plaintiffs, but refused to surrender the wharf extending westerly therefrom with the buildings erected thereon, and this action of unlawful detainer was thereupon instituted to recover possession of the same. The cause was tried by the court without a jury and resulted in a judgment of restitution for plaintiffs, from which judgment the defendants prosecute this appeal.

The only question to be determined is whether the relation of landlord and tenant was created between the parties, as to the property and premises in dispute, by the delivery and acceptance of the lease, or, in other words, whether these premises, as well as the lot particularly described, were included in and passed by the lease; and this question in no wise depends upon the ownership of the property, for the title of the lessors cannot be called in question by appellants, if, in fact, they went into possession under the lease. The intention of the parties at the time the lease was executed and delivered, as to what was included in it, must govern, and that intention must be discovered from the language employed in the instrument itself, considered in the light of surrounding circumstances.

The appellants contend that the terms of the lease are so plain and unambiguous that it is manifest that nothing was intended to be demised but lot 5 as designated on the plat. It is true that lot 5 is the property particularly described in the lease, but we think that other language found in the instrument makes it plain, as will hereafter be shown, that the adjoining wharf and buildings thereon were intended to be included. The description contained in the lease, including the addendum clause, reads as follows:

"All of lot number five (5) in block C of A. A.

Denny's First Addition to the City of Seattle, the same now being a water lot. Subject, however, to the several rights of way over said property heretofore granted by the said parties of the first part for railroad and other purposes. To have and to hold the said premises, with the appurtenances, unto the said parties of the second part, their executors, administrators, heirs and assigns, subject to said several rights of way, from the 21st day of April, 1887, to the 7th day of March, 1893."

The following provisions also appear in the lease:

. "And provided always that all docks, wharves, buildings and improvements whatsoever, which shall be made or constructed upon said property, or appurtenant thereto, by the said parties of the second part, their executors, administrators, heirs and assigns, during the said term shall, at the close of the same, or at the earlier termination of this lease, be the absolute property of the said parties of the first part, their heirs or assigns, and be left on said premises in as good order and condition . . . as the same may be constructed or placed by the said parties of the second part. . . . And provided further that the said parties of the second part . . . shall have the right to make all the improvements on the said property during the said term which they shall deem proper and that the same shall, at the close of the said term, inure to the benefit of the said parties of the first part, their heirs and assigns. And that all wharves, docks, buildings and improvements whatsoever which shall be made or constructed upon said property or appurtenant thereto, by the said parties of the second part, . . . during the term aforesaid shall, at the end of said term or at the earlier termination of this lease, be delivered up in like manner in as good order and condition as they may be constructed or put by said parties, . . . and that said parties of the second part . . . will keep all buildings and structures which may be placed on said premises during the said term as above

specified, except wharves and docks, safely insured,"
etc., for the benefit of the lessors.

Now, these clauses must not be overlooked or dis-
regarded, for, in construing a written instrument, full
effect must, if possible, be given to every part.   By
an examination of the above-mentioned provisions,
we discover that lot 5 was demised "with the appur-
tenances," subject, however, to the several rights of
way over said property theretofore granted by the
lessors for railroad and other purposes; that the
lessees and their assigns were granted the right to
make all improvements they deemed proper on the
said property during the term, but the same were to
inure to the benefit of the lessors at the close of the
term, and that all wharves, docks, buildings and im-
provements whatsoever constructed upon said prop-
erty, or *appurtenant thereto*, by the lessees were to be
delivered at the termination of the lease to the lessors.
If these provisions are to be given any force or effect,
it is clear that at the time of the execution of the
lease the parties had in contemplation something
more than the mere premises within the boundary
lines of lot five.   They must have understood that
they were also dealing with property and interests
outside of the lot, else they would not have provided
that improvements upon, or appurtenant to, it were to
be surrendered up to the lessors at the end of the
term.

But it is urged by the learned counsel for appellants
that the property in controversy, that is, the tide and
shore lands covered by the wharf extending from lot
five to deep water, is land; that land cannot be appur-
tenant to land and that, therefore, nothing passed by
force of the words "with the appurtenances" or "ap-
purtenant thereto."   It is true that, in a strict legal

sense, land cannot be appurtenant to land, but a wharf is not land within the construction of the maxim that land cannot pass as appurtenant to land, and flats like those in question may pass as appurtenant to a wharf, notwithstanding that maxim, if necessary to its use and usually used with it. *Doane v. Broad Street Ass'n.*, 6 Mass. 332.

" Land cannot be appurtenant to a building, in the strict sense of the term, but the word appurtenance may, in some cases, when used in a devise or lease, be read as 'usually held, usually occupied or enjoyed therewith,' when necessary to carry the intention of the parties into effect." 1 Wood, Landlord and Tenant (2d ed.), p. 416, note 1, and cases cited.

How are we to determine the intention of the parties to this lease? The question is well answered by the court of appeals of New York, in the following language:

" In construing contracts words must have the sense in which the parties used them, and to understand them as the parties understood them, the nature of the contract, the objects to be attained, and all the circumstances must be considered." *Cushman v. U. S. Life Ins. Co.*, 70 N. Y. 76. See, also, *Merriam v. United States*, 107 U. S. 437.

Among the circumstances that throw light upon the contract under consideration and tend to elucidate the meaning of its terms are these: At and prior to the execution of the lease there was a wharf adjoining lot five extending westerly to navigable water, which was used in connection with said lot and which the original lessees, appellants' predecessors, went into possession of and held under the lease. Appellants themselves never had or claimed possession of the demanded premises prior to the time when they took possession of lot five, by virtue of the lease. Again,

one of the rights-of-way for railroad purposes to which the lease was made subject was some two hundred and thirty feet west from the west line of lot five, and that certainly would not have been mentioned if it had been the intention to demise only the premises included within the boundary lines of the lot, as laid down on the plat. It is true, as counsel for appellants claim, that lot five, being tide and shore land, does not carry riparian rights and privileges as incident or appurtenant, but the question of riparian rights is not involved in this case. As we have already stated, the simple question is, was the wharf in dispute included within the lease; and, considering the language used, the object to be attained and the surrounding circumstances, we are constrained to conclude that it was. The fact that after the execution and delivery of the lease the city extended a public street across the premises in question surely cannot affect the rights of the respondents in the remaining portion. Nor does the fact that appellants, after the destruction of the original wharf by fire, erected another in its place and extended it further into the water, destroy or affect respondents' right of recovery in this action. It is a presumption of law that the extentions and enlargements of the original wharf were made for the benefit of the lessors. 1 Taylor, Landlord and Tenant (8th ed.), § 179. And in this case, the legal presumption and the intention of the parties, as disclosed by their agreement, coincide with each other.

From every point of view, we are of the opinion that the judgment appealed from was right and it is therefore affirmed.

HOYT, C. J., and DUNBAR, GORDON and SCOTT, JJ., concur.