BARRON v. ALEXANDER.

(Circuit Court of Appeals, Ninth Circuit. July 7, 1913.)

No. 2,171.

NAVIGABLE WATERS (§ 39*)—RIPARIAN RIGHTS—MAINTENANCE OF FISH TRAP IN ADJACENT WATERS.

The owner of a tract of land in Alaska fronting on Chatham Strait at a point where they are 12 miles wide *held* not entitled to an injunction to restrain another from constructing and maintaining a fish trap in the navigable waters in front of 'said land shown not to prevent or interfere with his access to the waters of the strait.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 21, 53, 82, 103, 112, 117, 127, 239–244; Dec. Dig. § 39.*]

Appeal from the District Court of the United States for the First Division of the District of Alaska; Thomas R. Lyons, Judge.

Suit in equity by James T. Barron against Claire J. Alexander. Decree for defendant, and complainant appeals. Affirmed.

John R. Winn and N. L. Burton, both of Juneau, Alaska, for appellant.

Z. R. Cheney, of Juneau, Alaska, for appellee.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

ROSS, Circuit Judge. This suit was brought by the appellant in the court below to obtain an injunction against the defendant thereto (appellee here) preventing the latter from completing a fish trap that he had commenced to erect in front of a 5.27-acre tract of land fronting on the south shore of the navigable waters of Chatham Strait, about five miles north of Hawk Inlet, in the district of Alaska, which upland the plaintiff alleged in his original complaint, and the trial court found, he owned. What the defendant did is thus alleged in that complaint, and substantially repeated in the amended and supplemental complaint afterwards referred to:

"On or about the 14th day of March, 1911, the above-named defendant, his agents, servants, and employés, entered upon the above-described survey No. 804 (covering the 5.27 acres), and upon the navigable waters directly in front of said' described land, with a pile-driver and piles, and commenced to drive piles upon the tidelands and waters immediately in front of and abutting upon the piece or parcel of land above-described and embraced within said survey No. 804; that ever since said time they have been and they are now driving piles upon said tidelands and water immediately in front of and abutting on said piece or parcel of land; that the driving of said piles in front

of plaintiff's land as aforesaid interferes with and obstructs his free egress and ingress to the navigable waters of said Chatham Strait and his right of free access to the deep and navigable waters of said Chatham Strait."

In his answer to the original complaint the defendant denied that he or any of his agents or employés ever entered upon the tidelands in front of the plaintiff's said tract, but admitted that he had driven piles and constructed a fish trap in the navigable waters of Chatham Strait in front of the plaintiff's land, and denied that such acts of his interfered with or obstructed the plaintiff's free ingress to or egress from the said navigable waters. And as an affirmative defense the defendant set up, among other things, that Chatham Strait is a large arm of the Pacific Ocean, navigable for all sizes of vessels, and about 200 miles in length, and has an average width of about 15 miles; that at the place where the defendant constructed his fish trap the strait is about 12 miles in width, in all parts of which the ocean tides regularly ebb and flow; that the waters of said Chatham Strait abound in fish, salmon being especially abundant, and that the said waters constitute a fishery, free, public, and common to all persons; that on or about November 1, 1910, the defendant, and others interested with him in business, located a place in the said strait about two miles south of Funter Bay on the shores of Admiralty Island and in the open navigable waters of the strait for the purpose of constructing a fish trap for taking salmon; that the place so located by the defendant is a valuable fish trap site for the reason that large schools of salmon abound in the immediate waters, and was unoccupied and unappropriated by any one—

"engaged in the fish business or in any other kind of business except commerce and navigation; that it was open, navigable water; that after so locating said place as aforesaid, defendant and his associates made soundings and thereafter, to wit, on March 14, 1911, at great expense procured piles and a pile-driver and steamboat, all of which defendant used in the construction and erection of a fish trap upon the location above mentioned; · that defendant drove said piles and constructed said trap entirely in the open, unoccupied, unappropriated, navigable waters of said Chatham Strait below lowtide lands of Admiralty Island; that the place where said trap was so constructed and driven by defendant is, as defendant is now informed, directly in front of land claimed by the plaintiff and called Nonmineral Survey No. 804."

The record shows that after a preliminary restraining order was issued the matter came on for hearing before the court, upon affidavits and oral testimony on the part of the respective parties, resulting in the dissolution of the restraining order, and that subsequently the plaintiff filed an amended and supplemental complaint in which he alleged, among other things, that he is the president of and largely interested in a certain named corporation owning and operating a large salmon cannery at Funter Bay, Alaska, about four miles from the site in question, and that it has at all times been the intention of the plaintiff to use the upland tract referred to "and the right of way out to deep water the entire width of said land as a fishing site and station, all of which is necessary to have and hold in order for plaintiff to successfully carry on the cannery business in which he is engaged"; that, as soon as the plaintiff became aware that the defendant was driv-

ing piles in the waters in question, the plaintiff forbade the same and commenced the suit and procured the restraining order referred to; and that upon the dissolution of that order the defendant completed his fish trap, which—

"was knowingly and maliciously and wrongfully done by said defendant with full knowledge of plaintiff's rights, and knowing full well that it would entirely and completely cut off and obstruct plaintiff's right of way from his upland out to deep water and navigable waters of said Chatham Strait, and the same has entirely obstructed, cut off, and rendered impossible plaintiff's ingress and egress to and from his land to deep and navigable waters of said Chatham Strait with gasoline boats, small steamers, and in fact any and all water crafts of any and all sizes except perhaps row boats, which has caused and is causing this plaintiff great irreparable damages."

The defendant in his answer to the amended and supplemental complaint put in issue all of its averments except those relating to the navigability of the waters in question and in respect to the dissolution of the temporary restraining order, and as an affirmative defense set up substantially the same matters alleged in his answer to the original complaint, which affirmative allegations were put in issue by the reply of the plaintiff.

The trial of the issues between the parties resulted in findings of fact made by the court, to the effect that the plaintiff is the owner and entitled to the possession of the 5.27-acre tract of upland, and in these further findings:

"That said tract of land abuts on Chatham Strait, an arm of the North Pacific Ocean; that in the spring of 1911 the defendant commenced the construction of a fish trap in the waters of Chatham Strait opposite and in front of the tract of land hereinbefore described; that subsequently and before the trial of this action the defendant completed the construction of said fish trap; that said fish trap and the whole thereof, including the lead line, are situate in the waters of Chatham Strait and below low-water mark; that defendant's fish trap does not in any manner interfere with the free ingress and egress to and from the premises hereinbefore described to the deep water of Chatham Strait, nor from any part of said premises to said deep water of said Chatham Strait; that the operation of said fish trap will not obstruct or interfere with the free ingress to or egress from the land hereinbefore described; and that none of the acts of the defendant with reference to the construction, maintenance, or operation of said fish trap have or will obstruct or interfere with the plaintiff in the exercise of his right to free and unobstructed access to his land and every part thereof from the deep waters of Chatham Strait or from his land, as hereinbefore described, to the navigable waters of said Chatham Strait."

The above findings of fact, being based upon very substantially conflicting evidence, are, under the well-established rule, conclusive here.

Moreover, the plaintiff's own testimony, as well as other evidence in the case, clearly shows that his object in bringing the suit was to enable him to construct a fish trap in the identical place occupied by the trap of the defendant, and not to a desire to wharf out from his upland or otherwise reach the navigable waters of the strait. It is not contended that the trap here in question falls within the prohibition of section 3 of the Act of Congress of June 26, 1906, c. 3547, 34 Stat. 479 (U. S. Comp. St. Supp. 1911, p. 1228), entitled "An act for

the protection and regulation of the fisheries of Alaska," which provides:

"That it shall be unlawful to erect any dam, barricade, fence, trap, fish wheel, or other fixed or stationary structure, except for purposes of fish culture, in any of the waters of Alaska, at any point where the distance from shore to shore is less than 500 feet, or within 500 yards of the mouth of any red salmon stream where the same is less than 500 feet in width, with the purpose or result of capturing salmon, or preventing or impeding their ascent to their spawning grounds, and the Secretary of Commerce and Labor is hereby authorized and directed to have any and all such unlawful structures removed or destroyed."

We see no merit in the appeal, and the judgment is, accordingly, affirmed.