### STRONG v. GILMORE et al.

(First Division.  Ketchikan.  August 24, 1921.)

No. 457K–A.

1. **Navigable Waters** &⟶36(2), 39(3)—Tidelands—Ingress and Egress.
   The ownership of the upland abutting on the seashore, in Alaska, does not, in and of itself, confer any ownership of the tidelands in front thereof.  The owner of the upland has only a right of way over the tidelands to reach the navigable water, and that only if he needs such easement and exercises

---

&⟶See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

it in a reasonable way. If there is a new ownership between the tidelands abutting upon his upland and the navigable water, then of course he has no easement over the tidelands because his access to navigable water has already been cut off by the intervening ownership. He therefore has no interest whatsoever in the tidelands.

**2. Judicial sales ⬅⬆59—Redemption—Prior Liens.**

Redemption from judicial sale is purely a statutory proceeding. Under the statute in Alaska no one can redeem but the judgment creditor, his successor in interest, or a lienholder. When the judgment creditor buys the property at foreclosure sale, he becomes the owner thereof subject to the prior liens; and where the purchaser sells the property to another the latter takes as owner subject to the prior liens, and not as a lienholder.

**3. Mortgages ⬅⬆133—Navigable Waters ⬅⬆37(7)—Tideland Improvements—"Appurtenances."**

Where an owner of a lot abutting on tidelands gave a mortgage on the lot, "together with all improvements thereon, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging," a considerable portion of the building mortgaged was on the tideland, and the building could not be enjoyed except in conjunction with the tideland, the tideland should be held to have passed by a conveyance of the upland, the tenements, hereditaments, and "appurtenances," and to be covered by the mortgage.

On October 31, 1912, P. F. Gilmore was the owner of lot 6, block 19, in the town of Ketchikan, and of a tract of tideland abutting thereon and extending seaward to the Northland dock, which cut off said tract of tideland from the navigable water. On said date Peter Ziller recovered judgment against the said Gilmore, and the same became a lien on all the real property of the said Gilmore.

On December 11, 1913, Gilmore executed a mortgage to the Miners' & Merchants' Bank of Ketchikan on "lot 6, in block 19, * * * together with all the tideland rights, possessory rights, littoral rights, piling, buildings, and improvements lying between said upland lot and the property of the Northland Steamship Company (locally known as Strong's wharf), together with that certain two-story store building known as the Market, and all improvements thereon, together with all and singular the tenements, hereditaments, and ap-

purtenances." This will be referred to as the bank's $1,500 mortgage.

On December 6, 1914, Gilmore executed a second mortgage to Charles H. Cosgrove on "lot 6 in block 19 of the town site of Ketchikan, Alaska, according to subdivisional survey and plat of said town site by J. C. Barber, together with all improvements thereon, together with all and singular the tenements, hereditaments, and appurtenances thereunto belonging." This mortgage contained the following provision:

"This mortgage is executed subject to that certain mortgage of date December 11, 1913, running from said first parties to Miners' & Merchants' Bank of Ketchikan, Alaska, in the sum of $1,500.00, now on file with the recorder at Ketchikan, Alaska."

This mortgage was foreclosed by suit (to which said suit the bank was not a party), and the property was purchased by Cosgrove at the marshal's sale. No redemption having been made, the marshal executed a deed to Cosgrove, dated November 21, 1916. Cosgrove sold to the Alaska Investment Company on October 13, 1918, "subject to a first mortgage of $1,500.00"; and on the same date the investment company sold to John Koel, "subject to a first mortgage of $1,500.00." This will be referred to as the Cosgrove mortgage.

On November 13, 1916, Gilmore mortgaged to the Miners' & Merchants' Bank the tideland only, heretofore referred to, to secure the sum of $500. This will be referred to as the bank's $500 mortgage.

On January 30, 1918, the marshal duly levied execution under said Ziller judgment on "all the right, title, and interest which the said P. F. Gilmore had on October 31, 1912, in and to lot 6 in block 19, according to the subdivisional survey of the town site of Ketchikan, Alaska, together with the littoral rights and all other improvements thereon," and duly sold same to Peter Ziller on February 28, 1918. The sale was duly confirmed on July 10, 1918. Neither Gilmore nor the bank offered to redeem within the time allowed by statute. Koel appeared and tendered the requisite amount in redemption and received from the marshal a certificate of redemption reciting:

"That John Koel, having presented to me a certain United States marshal deed of said land and premises conveying the same to Chas. H. Cosgrove and a deed of the same from Chas. H. Cos-

grove and wife conveying the same to the Alaska Investment Company, and a deed conveying the same from the Alaska Investment Company to John Koel, he being thereby entitled to redeem the same from said execution sale, and the said John Koel on the 20th day of September, 1918, paid me the sum of three hundred sixty and $52/100$ dollars in full redemption of said land and premises from said execution sale, and I thereupon paid said sum to S. A. Plumley, attorney for said Peter Ziller, the purchaser at said sale."

By assignments duly made complainant became and now is the owner and holder of the mortgages to the bank, and (the mortgage debts being still unpaid) is by this action seeking to foreclose same. He has made Gilmore and Koel parties defendant. Koel contends that on account of the fact that the bank failed to redeem the property within the time allowed by statute, and that he did redeem said property, the mortgages to the bank are cut out.

Shoup & Shoup, of Ketchikan, and Edwin James Brown, of Seattle, Wash., for plaintiff.

S. A. Plumley and Chas. H. Cosgrove, both of Ketchikan, for defendants.

JENNINGS, District Judge. The gist of the controversy is in these questions, to wit: (1) Did the redemption by Koel from the sale under the Ziller judgment (which said judgment was a first lien) cut out the bank's $1,500 mortgage? (2) Was the Cosgrove mortgage a lien upon the tideland, superior to the bank's $500 mortgage?

Before considering these questions, however, it will be necessary to clear the ground of certain misconceptions as to littoral rights and of confusion arising from certain differences in the descriptions of the property contained in the various instruments.

Under the Ziller judgment the marshal sold "lot 6, block 19, * * * together with the littoral rights and all other improvements thereon." What littoral rights inhered in lot 6, block 19? The answer must be: None. It has been repeatedly decided by our appellate court that ownership of the upland does not, in and of itself, confer any ownership of the tideland in front thereof. The owner of the upland has only a right of way over the tidelands to reach the navigable water, and that only if he needs such easement and exercises it in a reasonable way. Columbia Canning Co. v. Hampton, 161

Fed. 60, 88 C. C. A. 224; Barron v. Alexander, 206 Fed. 272, 124 C. C. A. 336; Sheldon v. Messerschmidt, 247 Fed. 104, 159 C. C. A. 322.

If there is a new ownership between the tidelands abutting upon his upland and the navigable water, then of course he has no easement over the tidelands, because his access to navigable water has already been cut off by the intervening ownership. He therefore has no interest whatsoever in the tidelands. McCloskey v. Pacific Coast S. S. Co., 160 Fed. 794, 87 C. C. A. 568, 22 L. R. A. (N. S.) 673. In this case, however, Gilmore, the owner of lot 6, block 19 (the upland), had constructed a building thereon which extended for quite a distance over the tidelands. When Koel bought from the purchasers under the foreclosure sale of the Cosgrove mortgage, he took possession of the tideland. He did this with the acquiescence of Gilmore. Now that possession would of itself and without reference to the Ziller judgment give Koel the ownership of the tideland, subject, of course, however, to any incumbrance that might have existed thereon. There was an incumbrance, to wit, the bank's $1,500 mortgage, and, as that incumbrance was on record, he is chargeable with notice.

The Cosgrove mortgage is a mortgage of "lot 6 in block 19 of the town site of Ketchikan, together with all and singular the tenements, hereditaments, and appurtenances thereunto belonging." It is claimed by the defendant that the tideland is an appurtenance of the upland because the building mortgaged (the Market) is partly on the tideland and partly on the upland. As will be seen hereinafter, the court is of opinion that that point is well taken, but it is not apparent how it can avail defendant Koel so far as the conflict between the Cosgrove mortgage and the bank's $1,500 mortgage is concerned, for the Cosgrove mortgage contains the following provision:

"This mortgage is executed subject to, that certain mortgage of date December 11, 1913, running from said first parties to the Miners' & Merchants' Bank of Ketchikan, Alaska, in the sum of $1,500.00, now on file with the recorder at Ketchikan, Alaska."

The intention to mortgage the tideland is expressed in the bank's $1,500 mortgage in language much clearer than that used in the Cosgrove mortgage. Surely if, as contended by defendant, the tideland is to be construed as having been in contemplation in the Cosgrove mortgage because that instru-

ment mortgages the "appurtenances," with what greater certainty should that tideland be considered as being in contemplation in the bank's $1,500 mortgage, where the tideland rights, possessory rights, littoral rights, etc., are expressly referred to, so it could not avail Koel whether the tideland does or does not come under the appellation "appurtenances."

I therefore conclude that whatever title Koel acquired to the tideland property, by virtue either of the Ziller judgment, the Cosgrove mortgage sale, or by his possession, was subject to the Bank's $1,500 mortgage.

Taking up now the question as to the effect of Koel's redemption from the sale under the Ziller judgment:

Redemption is a purely statutory proceeding. Under the statute no one can redeem but the judgment creditor, his successor in interest, or a lienholder. When Cosgrove bought at the foreclosure sale of his mortgage, he became the owner of the property subject to the prior liens, to wit: (1) The Ziller judgment; (2) the bank's $1,500 mortgage. This ownership, subject to said liens, he sold to the Alaska Investment Company, and the latter sold the same to Koel. Koel therefore became owner, and not a lienholder. He is "successor in interest" of Gilmore, it is true, but he took Gilmore's interest subject to the liens thereon, to wit, the said judgment and mortgage. Koel redeems, but not as a junior lien holder; he redeems as owner. This is shown by the very terms of the marshal's certificate of redemption (Exhibit No. 12). That certificate of redemption conveyed no title to Koel. It simply cleared his property of one lien, to wit, the Ziller judgment, and, if the proceeds of the sale from which he redeemed had not been at least equal to that judgment and costs, he would not even have cleared his property from the lien of the remainder of that judgment. Settlemire v. Newsome, 10 Or. 446. There being still another lien on this property, to wit, the bank's $1,500 mortgage, it is difficult to find ground on which the contention could stand that the clearance from one lien is also a clearance from the other; rather, one would think, a clearance from the first lien would but advance into first place that which had theretofore occupied the second place.

In the case of Dickerman v. Lust, 66 Iowa, 444, 23 N. W. 916, the facts were very similar to the facts in the case at

bar, only in the case at bar the first lien is not a mortgage, but a judgment. The facts in the case just cited were these: Lust executed a first mortgage to Paine, a second mortgage to Taylor, and a third mortgage to Spillman. Dickerman became the owner and assignee of the Paine and Taylor mortgages. He foreclosed the Paine mortgage and bid in the property at execution sale; then Spillman foreclosed his mortgage and bid in the property at execution sale, and within one year deposited with the clerk the amount necessary to redeem from the sale under the Paine mortgage, and Dickerman drew the money from the clerk's hands. Subsequently Spillman obtained a sheriff's deed in pursuance of the sale under the Paine mortgage, and when Dickerman, who was still the owner of the Taylor mortgage, sought to foreclose, Spillman claimed that by virtue of the failure of Dickerman to redeem from the sale under the Paine mortgage, and by virtue of his own redemption from the sale under the said mortgage, the second mortgage—i. e., the Taylor mortgage—was cut out.

The lower court held with Spillman, but the case was reversed by the Supreme Court of Iowa, the latter court saying:

"Where a junior creditor redeems from an execution sale, he becomes entitled to an assignment of the certificate of purchase. * * * If no redemption is made from him, he becomes entitled to a sheriff's deed as the owner of the certificate. * * * But the defendant Spillman did not redeem as a junior creditor. It is true that he was at one time junior creditor, but he had ceased to be such at the time he redeemed. He had foreclosed his mortgage, and bid in the property at execution sale. A year had expired and he had taken a deed. Lust's title had been extinguished and the title had vested in Spillman. The latter had stepped into Lust's shoes, and when he redeemed he redeemed as owner. * * * Now, having redeemed as owner, he did not become entitled to a deed by virtue of the redemption. Where the redemptioner is owner. he has no occasion to take a deed, and the statute does not provide that he may. He simply extinguishes a debt which rests upon his property. When Spillman bought, he is supposed to have bought subject to the debt which he paid off when he redeemed. He bought and took a deed of Lust's interest, which was an equity of redemption. He had still to pay off the Paine debt in order to protect his title. But the payment of that debt did not divest the Taylor mortgage which the plaintiff is now seeking to foreclose, It made that mortgage the first lien which had theretofore been second."

It is not necessary to discuss the question as to whether or not, if Koel had been the holder of a junior incumbrance, he could have redeemed from the sale under the Ziller judgment and have thus protected his lien on account of the fact that the senior mortgagee had forfeited his right to redeem by laches, because, as said in 27 Cyc. p. 1867, § 3:

"Junior liens are not cut off where the redemption is made by the mortgagor; but it is otherwise when it is made by a creditor, as to whom the junior lien holder might have redeemed, but did not."

Having determined that the redemption by Koel from the sale under the Ziller judgment did not cut out the bank's $1,500 mortgage, the question remaining to be considered is this: Was the Cosgrove mortgage a lien upon the possessory right to the tideland so as to take precedence of the bank's $500 mortgage, the Cosgrove mortgage being prior in point of time? It is said that the "thing of value" in contemplation to mortgage in the Cosgrove mortgage was the income-bringing property, to wit, the Market, and that, as a considerable portion of that building was on the tideland, and the building could not be enjoyed except in conjunction with the tideland, the tideland should be held to have passed by a conveyance of the upland, the tenements, hereditaments, and "appurtenances." Support for this contention is found in the following, among other, cases: Brown v. Carkeek, 14 Wash. 443, 44 Pac. 887; Book v. West, 29 Wash. 70, 69 Pac. 630; Greenwood v. Murdock, 9 Gray (Mass.) 20, 69 Am. Dec. 272, and cases cited in note; N. Y. C. R. R. Co. v. Mathews, 144 App. Div. 732, 129 N. Y. Supp. 828. The contention seems sound.

My conclusion, then, is that the bank's $1,500 mortgage is a first lien, and should be foreclosed as prayed for, but that the bank's $500 mortgage, being junior to the Cosgrove mortgage, which has been foreclosed, is no longer a lien upon the property.

Findings and decree in accordance herewith.