### WRANGELL ICE CO. v. McCORMACK DOCK CO.

First Division. Juneau. April 16, 1925.

No. 2466–8.

**I. Navigable Waters ☞43(2)—Tide Lands—Littoral Rights.**

> The McCormack Dock Company leased portions of its docks and the buildings thereon to the Wrangell Ice & Storage Company for use as a cold storage plant. The ice company thereafter entered on the adjoining tide lands, outside the line of littoral rights of the dock company, and began the construction of a dock. The dock company went beyond the actual constructions of the ice company and erected a temporary dock in such a manner as to inclose and shut the ice company off from approach over the tide lands to deep water. On a suit by the ice company against the dock company to enjoin it from interfering with its construction of its dock structure to deep water, *held*, the structures of both plaintiff and defendant were outside the line of littoral right of the lands leased by the defendant to the plaintiff, on tide lands lying in front of other upland owners, and neither had any right of possession thereto under claim of littoral right under the property leased by the defendant to the plaintiff; complaint and cross-complaint dismissed.

☞See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. Navigable Waters ⚖═36(3), 39(3)—Title to Tide Lands.

The title to tide lands is in the United States, and by it held in trust for the benefit of the future state, subject, however, to disposition by the Congress of the United States; but the owner of lands in Alaska which border on navigable waters has the right of access to such waters over the intervening tide lands for the purpose of commerce and navigation. This is a general rule, and is designed to keep the navigable waters open to the public for commerce and navigation, and at the same time permit the littoral owner and those engaged in commerce and navigation to have access to such waters.

3. Navigable Waters ⚖═39(3)—Injunction—Upland Owner's Right of Access to Navigable Waters.

The owner of lands bordering on tide water has the right to enjoin any persons preventing his access to navigable waters, where he desires to enjoy the right of access to such waters, although not claiming any right to the intervening tide lands.

4. Navigable Waters ⚖═46(2)—Landlord and Tenant—Lease of Dock for Cold Storage—Littoral Rights Limited by Lease and Intention.

Where a landlord dock owner leased a warehouse and buildings on both upland and dock to another for cold storage and dealing in fish, and there was no apparent intention of the parties by the lease or otherwise to pass to the lessee any littoral rights of wharfing out from the leased property, held, that no littoral right of wharfage was conveyed or intended to be conveyed to the lessee.

5. Navigable Waters ⚖═39(3)—Tide Lands—Lateral Access of Upland Owner.

Where the shore line is regular, the lateral access of the upland owner to the navigable waters is bounded by lines drawn from the extremities of the upland owned by the littoral proprietors at right angles to the shore line. The Massachusetts rule is that, where there is a cove, the equitable method is to draw a line from headland to headland of the cove, and from this line project at right angles lines therefrom to the shore land termini of the several upland proprietors as the division lines between them. In Rhode Island and Oregon, where the government had established a pier head or harbor line, the courts held that an equitable division was to draw a line from the pier head line at right angles therefrom to meet the division line between the plaintiff and defendant at the shore.

6. Navigable Waters ⚖═39(3)—Lines of Littoral Right Extended to Navigable Water at Right Angles to Shore Line.

In Alaska no pier heads or harbor lines have been established, but the principle that the line of navigable water should be taken as the basis of division of frontage seems most equitable, where, as in this case, the indentation or cove is shallow.

⚖═See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**7. Navigable Waters ⬤═43(4)—Injunction—Littoral Rights.**
      One who has no littoral right or prior possession to tide lands
   in Alaska cannot maintain a suit to restrain another person in
   possession of tide lands from erecting structures thereon.

The plaintiff brought this action to enjoin the defendants
from interfering with the construction of a dock or wharf
which it was building out into the waters of Etolin harbor at
Wrangell, in the First judicial division of the territory.   The
defendant, answering, after denying the material allegations of
the bill of plaintiff, and alleging other matters more or less
material by way of a cross-bill, seeks affirmative relief from
this court, restraining the plaintiff from constucting its pro-
posed wharf or dock.   The action involves the littoral rights
of the parties as claimants to the upland bordering on the tide
waters of Etolin harbor, as well as the construction and legal
effect of a lease made between the parties.

To me it is a most difficult and unsatisfactory case in which
to reach a conclusion free from doubt.   While there is not a
great conflict in the testimony of the parties, as will be seen
from the summary following, yet to me the legal questions in-
volved from the testimony are very difficult to decide.   The
conclusion at which I have arrived, as before intimated, is one
which may be wrong, and certainly will not be satisfactory to
either of the parties; but, such as it is, with the reasons there-
for, I have decided to extend it herein.   Preferably, I would
take further time to consider the case, but in view of the ur-
gency of the matter expressed by both parties I have concluded
to decide the case according to the views which I have come
to from present investigation of the authorities.

It appears from the testimony that the McCormack Dock
Company, a copartnership composed of P. C. and Leo Mc-
Cormack, for a number of years last past, was the owner
of fractional lots 1 and 2 in block 1 of the town site of Wran-
gell.   These lots are situated on a rounded point of land which
borders on the tide waters of Etolin harbor, and the waters of
Etolin harbor skirt the shore of the lots.   For some 20 years
the defendant, hereafter designated as the "dock company," has
maintained a public dock extending from Front street in the
town of Wrangell and covering the shore line of the lands out
in a southerly direction into the waters of Etolin harbor, a

distance of approximately 300 feet; the shore approach to the dock extending along the full meander line of the lots. This dock, so maintained by the defendant, was a substantial dock for public use. On the shore approach to the dock, fronting on Front street in the town of Wrangell, are two large warehouses, both of which are partly on the upland and partly on the tide land, and extend over the dock in a southerly direction, in a general line therewith, a distance of approximately 100 feet. These two warehouses were erected side by side, with a narrow passageway between. The westerly warehouse is called the bonded warehouse, and the other the domestic warehouse. At the outer end of the dock the dock company established a warehouse for the reception of freight from vessels landing at the face of the dock, and also to use it to some extent for cooling fish received for shipment.

In the spring of 1924 negotiations were entered into between the storage company and the dock company for a lease of a portion of the dock company's holdings and for the purpose of placing an ice and cold storage plant thereon, and the dock company, in pursuance of such negotiations, built an addition to its dock approximately 110 feet long and about 15 feet wide along the westerly side thereof, and on the addition so built and planned, extending over the original dock, erected a fish house about 30 feet in width and 70 feet in length. This fish house was connected with the bonded warehouse by a covered passageway. A part of the addition to the dock so built ran in a diagonal direction from the southwesterly corner of the fish house to the original dock. The face of this part of the dock was about 50 feet in length, and opposite this face the dock was open for the reception of fish from vessels; the face itself being constructed with fender piles as a landing place for small vessels of the usual type of fishing craft. These additions to the original dock structures were made by the dock company at the suggestion of the plaintiff, through Mr. O. D. Leet, manager of the storage company, preliminarily to entering into a lease of the premises for the purpose of using the same as an ice and cold storage plant.

On May 12, 1924, the plaintiff and the defendant entered into a written lease, under the terms of which the defendant dock company leased to the plaintiff storage company, for a period of 20 years, the bonded warehouse, the fish house, the shed connecting the two buildings, the triangular fish landing

place, and a portion of the dock or wharf. This lease carried an option of renewal for 20 years after the expiration of the term and provided for the payment of a monthly rental of $50, with the further provision that, during the period of nonoperation of the plant as a cold storage plant, the monthly rental would be $75. It further provided that the plaintiff lessee should keep in repair the piles, foundation, and underpinning of all the buildings and premises leased, and that the lessee should keep in repair all buildings, except as otherwise provided; that the lessor would receive over its dock freight consigned to and shipped from lessee at a wharfage rate of $1 per ton, and that, should the buildings and premises leased prove inadequate to take care of the business of the lessee, the lessor would lease the warehouse on the easterly side of the bonded warehouse, known as the domestic warehouse. It further provided that, in case 40 per cent. of the buildings should be destroyed by fire, the lessee may, at its option, declare the lease null and void, and that the lessor should keep insurance on all the buildings.

The description of the property, as set forth in the lease, is in these words:

"All that certain frame building located on the south side of Front street in said town of Wrangell, Alaska, being known as the bonded warehouse, and being 106 feet long and 39 feet wide, together with a certain frame building which has been recently added to said bonded warehouse, on the southerly side thereof, and being 12 feet long by 24 feet wide, together with a certain platform and wharf extending southerly from and adjoining said bonded warehouse, along the approach to the McCormack dock to deep water on Etolin harbor, and being described as follows: Beginning at the southeast corner of said bonded warehouse, southerly in a straight line with the eastern side of said bonded warehouse, 36 feet; thence westerly at right angles 19 feet; thence southerly approximately 177 feet along the said approach to the McCormack dock to said deep water of Etolin harbor, to a point 9 feet easterly from the westerly side of the approach to said McCormack dock; thence westerly at right angles 9 feet to the westerly side of said approach to the McCormack dock; thence northerly along the westerly side of said approach to the McCormack dock to the southwestern corner of said bonded warehouse, including the platform and wharf recently added to the westerly side of said approach to the McCormack dock; also including one frame fish house 26 feet in width and 75 feet long on the southerly side of the platform and wharf above described, and a frame covered passageway approximately 20 feet in width, connecting the said fish house with said bonded warehouse, together with the right to use all established approaches to said property and buildings—all as shown by the attached sketch of said leased property and premises."

A plat of the premises was attached to the lease as follows:

· The plaintiff entered into the possession of the leased property upon the execution of the lease, and ever since has been and now is in possession thereof as tenant of the defendant. On or about December 6, 1924, one of the defendants, P. C. McCormack, having determined to construct an additional public wharf, applied to the United States collector of customs for a permit or lease of tide lands on the westerly side of the bonded warehouse, for the purpose of enabling him to construct a wharf across the tide land, adjoining on the west the bonded warehouse. These tide lands lie southwesterly from the government reserve in the town of Wrangell and immediately west of the wharf property of the defendant leased to the plaintiff. The customs officials, on December 28, 1924, not considering the tide lands in question appurtenant to the government upland property, referred Mr. McCormack to the War Department, and on December 29th he applied to the Engineer Corps of the War Department at Juneau for a permit to erect a wharf, claiming the right to so erect as littoral owner of the shore. On December 31st the acting district engineer of the War Department replied to Mr. McCormack, advising him of his rights and of the requirements necessary for a permit. On January 8, 1925, Mr. McCormack sent to the said engineer a plat of his proposed structure and again applied for a permit to erect a wharf in accordance therewith, and on February 14 the engineer in charge notified McCormack that the plaintiff had filed a protest against the issuance of the permit requested.

It appears from the testimony that after the request of January 8th, made to the War Department by Mr. McCormack, the engineer referred the matter to the council of the town of Wrangell, apparently for the purpose of ascertaining whether the same conflicted with the regulations or rights of the city. The town council in February held a special meeting, at which the matter of the proposed wharf came up for consideration, and at which meeting the manager of the plaintiff company,

Mr. Leet, was present. This it appears was the first notice coming to the plaintiff company of the proposed wharf of the Mc-Cormack Company, and a prompt protest was entered by the plaintiff company, as lessee of the property described above, to the issuance of a permit to McCormack for his proposed wharf.

On February 16, 1925, the plaintiff commenced the construction of a wharf, the approach to which was at the northwesterly corner of the bonded warehouse, extending along the westerly side of the warehouse some 30 feet and to the westward over the tide lands to deep water. At the same time it prepared a detail and map showing the proposed structure to be erected by the plaintiff company in compliance with the rules of the Engineer Corps of the War Department, showing an extensive dockage system to have been contemplated by it. The defendant dock company, perceiving the wharf of the plaintiff being constructed, built a structure completely inclosing and shutting off the plaintiff from deep water, and also preventing further work by plaintiff on said structure. This structure, the defendant admits, was temporary in character and built for the purpose of shutting off the plaintiff from deep water under its claim of littoral rights. The plaintiff thereupon commenced this action, praying an injunction and temporary restraining order. The temporary restraining order was granted, and by stipulation the final hearing was had before the court from March 31 to April 2, 1925.

The plaintiff and defendant each claims the right of wharfage into the navigable waters of Etolin harbor, based upon a littoral right as owner of an estate in the upland; each asserts that the wharf is to be constructed for the purpose of commerce and navigation, and each asserts the right of approach to the proposed wharf to the street on the northwest corner of the bonded warehouse leased by the defendant to the plaintiff. The contention, primarily, of the plaintiff is that it, as lessee of the premises occupied by the bonded warehouse, has the littoral right to wharf out over and across the adjacent tide lands to deep water for the purpose of commerce and navigation; and, secondly, that the leased premises, being bounded on the west by the waters of Etolin harbor, the defendant cannot, by any structure, shut off and deprive it from access to such waters. The defendant, on the other hand, contends that under the terms of the lease no littoral right passed to the plaintiff, and that it therefore had no right to trespass on defendant's lit-

toral rights, and that the lands adjoining the leased premises on the west are tide lands, uncovered at mean low tide, and no right of plaintiff would be trespassed upon by wharfing out adjacent to the leased property.

To clarify the situation as it appears on the ground, the plaintiff and defendant each submitted plats of elaborate surveys made on the ground. The plats are in evidence and fully illustrate the situation. It will be noted from the plats referred to that the meander line and line of ordinary high tide across lot 1 of block 1 nearly coincide, and for the purpose of this case the lines may be considered identical. It is further to be noted that a corner of the bonded warehouse extends over the upland, and that the meander line, or line of ordinary high tide, under the warehouse, is approximately 50 feet in length, running northwesterly and southeasterly across the upper or northeast corner of the bonded warehouse.

The basis of plaintiff's contention is that a leasehold estate in the uplands covered by the bonded warehouse passed to it, and that with such estate there passed to it all rights appurtenant, and of these rights the littoral rights of defendant, by reason of its ownership of this upland, were transferred to it by virtue of the demise, and that therefore the right of wharfage out to navigable waters was vested in the plaintiff; that the defendant's structure was an invasion of this right, and that a permanent injunction should be granted against the defendant.

The defendant, on the other hand, contends that no littoral rights passed to the plaintiff under the terms of the lease, and that therefore the plaintiff, in constructing its dock, was a mere trespasser on its littoral right of wharfage, and should be enjoined from constructing its wharf.

R. E. Robertson, of Juneau, for plaintiff.
Hellenthal & Hellenthal, of Juneau, for defendant.

REED, District Judge. It seems to me that the rights of the parties are to be determined only from correct answers to the following questions: (1) Whether or not any littoral right passed to the plaintiff under the terms of the lease; (2) whether or not a littoral right appurtenant to the upland under the warehouse was trespassed, or about to be trespassed, upon by either of the parties and the extent of such trespass; and

(3) the extent of the relief that could be afforded to either party under all the circumstances of the case.

Before considering the questions, it will be noted from plaintiff's map of the premises (Exhibit No. 1) and photographs that between the line of mean high tide and mean low tide are extensive tide lands. These tide lands comprise most of the land covered by the bonded warehouse, and extend considerably to the westward thereof. The wharf structure proposed and partially erected by the plaintiff, as well as that of defendant, are erected on these tide lands. The title to these tide lands is in the United States, and by it held in trust for the benefit of the future state, subject, however, to disposition by the Congress of the United States; but the owner of lands in Alaska which border on navigable waters has the right of access to such waters over the intervening tide lands for the purpose of commerce and navigation. This is a general rule, and is designed to keep the navigable waters open to the public for commerce and navigation, and at the same time permit the littoral owner and those engaged in commerce and navigation to have access to such waters. Gould on Waters (3d Ed.) par 149; Hardin v. Jordan, 140 U. S. 371, 11 S. Ct. 808, 838, 35 L. Ed. 428; Shively v. Bowlby, 152 U. S. 1, 14 S. Ct. 548, 38 L. Ed. 331. The owner of lands bordering on tide water has, therefore, the right to enjoin any persons preventing his access to navigable waters where he desires to enjoy the right of access to such waters, although not claiming any right to the intervening tide lands. Dalton v. Hazelet ( C. C. A.) 182 F. 561. This right of access, as was said in Gould on Waters, par. 149, exists in case of tide waters, even when the shore is the sovereign's property, both when the tide is in and when it is out. It is distinct from the public right of navigation, and an interruption of it is an encroachment upon a private right, whether caused by a public nuisance or authorized by the Legislature.

It therefore may be taken as the settled law of this jurisdiction that the upland proprietor of lands bordering on tide waters has the right of access to navigable waters in front of his land, and any obstruction interfering with such right may be enjoined. It is further settled that such littoral right is appurtenant to the land which may be disposed of apart from the land. Decker v. Pacific Coast Steamship Co. (C. C. A.) 164 F. 974–977.

This brings us to the first question—whether any littoral right passed to the plaintiff under the terms of the lease.  If it did, under the pleadings the prayer of the plaintiff should be granted; if not, the littoral right appurtenant to the land remained in the defendant, and the question then arises whether or not that right was being trespassed upon by the plaintiff.

Counsel for the plaintiff strenuously insists that the rule is that, in the absence of express reservation, a lease of a building grants, not only the land on which it is situated, but also all appurtenances thereto, including the littoral rights appurtenant to the land, and cites many cases in support of his contention which are more or less pertinent.  Counsel for the defendant, on the other hand, contends that nothing passes by implication as incident or appurtenant to leased premises, except such privileges or easements as are directly necessary to the proper enjoyment of the demised premises; that the defendant leased the bonded warehouse and a portion of the wharf to the plaintiff for the purpose of maintaining a cold storage plant, and that the littoral rights of a strip of the upland were not directly necessary to the enjoyment of the premises demised; and that it was not in the contemplation of the parties to grant any right to wharf out over the land subject to the littoral rights belonging to the defendant.

To my view the question whether there was demised to the plaintiff the upland covered by the bonded warehouse can only be resolved by considering the intention of the parties entering into the lease in view of the circumstances surrounding the case at the time.  The description of the leased premises seems to be segregated into two parts.  First, there is a lease of the bonded warehouse and the building adjoining it, and then of the platform and wharf extending southerly and adjoining said bonded warehouse building.  Then follows a description of the platform and wharf by metes and bounds and the buildings thereon.  The demised premises are further described by the diagram attached to the lease.  The testimony is to the effect that Front street and the building known as the bonded warehouse are on piling and that the warehouse covers a portion of the wharf property.

These facts differentiate the question in this case from an ordinary lease of a building built on land.  Therefore it seems to me, as above noted, that the intention of the parties, in the light of the circumstances surrounding them at the time, should gov-

7 A.R.—20

ern the case. See Davis et al. v. Atkins, 9 Cush. (Mass.) 13; Tunis v. Grandy, 22 Grat. (Va.) 109; Brown v. Carkeek, 14 Wash. 443, 44 P. 887; 16 R. C. L. 187.'

Considering the testimony, it appears that the defendant dock company for many years has owned the public wharf off lots 1 and 2 in block 1 of the town of Wrangell, and has been, for a number of years, doing a wharfage business; that it erected on the public dock, adjoining Front street, two warehouses—one known as the bonded warehouse, for the storage of merchandise bonded through to neighboring foreign countries, and the other for the storage of merchandise of domestic destination. The plaintiff, in 1923, and in the spring of 1924, desiring space adjacent to the navigable waters of Etolin harbor for an ice and cold storage plant, entered into negotiations with the defendant for the lease of its bonded warehouse and other space on its public wharf. It appears that thereupon the plaintiff entered into preliminary negotiations, as a result of which the defendant built an addition to its wharf and erected a building thereon known as the fish house, and a structure connecting the latter with the bonded warehouse, and provided additional wharfage facilities for the landing of fish at the entrance to the fish house. These facilities and structures so erected, and the bonded warehouse, were then leased to the plaintiff at what the testimony of the defendant asserts was a nominal rental. While there were no restrictions in the lease as to the nature of the business to be engaged in by the lessee, yet it appears that it was understood that the business to be engaged in was that of an ice and cold storage plant, for it was provided therein that, should the lessee fail to maintain and operate a cold storage plant on said property in the regular course of business, he should pay an additional rental of $25 a month. The lessor was required to keep all the buildings in repair, while the lessee was to repair the piles, foundations, and underpinning of the buildings; the lessor was to insure all the buildings against fire, and in case of loss by fire of the buildings, to the extent of 40 per cent., the lease would, at the lessee's option, terminate; that the lessor would ship over its dock all incoming and outgoing freight to and from the lessee's cold storage plant at $1 per ton, which was one-third off from the usual wharfage rate.

From these stipulations in the lease and the surrounding circumstances detailed in the testimony, I can come to no other conclusion than that it was not the intention of the parties by

the lease to pass to the lessee any littoral right of wharfing out from the leased property. The intention of the parties to the contract must govern in a case where the interpretation of the lease as to what passed thereby is uncertain, and I am forced to the conclusion, from the circumstances surrounding the case, as shown by the testimony, that no littoral right of wharfage was conveyed or intended to be conveyed to the plaintiff lessee.

This conclusion that no littoral right passed to the plaintiff under the lease brings us to the question whether the right of wharfing out over the tide lands, proposed by the defendant, is vested in the defendant. It will be noted from the plat of the survey, Exhibit 1, that the line of ordinary high tide under the bonded warehouse, on which the defendant dock company bases its right of wharfage, runs in a northwesterly and southeasterly direction, and that at its intersection with the southerly side of Front street the line abruptly turns to the west, making a shallow cove in the shore line at that point. Ordinarily, where the shore line is regular, this lateral access to the navigable waters is bounded by lines from the extremities of the upland owned by the littoral proprietors at right angles to the shore line. Whitaker v. McBride, 197 U. S. 510, 25 S. Ct. 530, 49 L. Ed. 857; Young v. Juneau, 4 Alaska, 384.

It appears from the plat of the survey of the premises that lines drawn at right angles to the upland, on which plaintiff bases its claim to its littoral right of access to navigable water, would pass through the bonded warehouse. The easement or franchise of access to deep water appurtenant to the upland, as claimed by the defendant, would extend at right angles to the shore line over the wharf, under the bonded warehouse, some few feet south of the northwest corner of the warehouse, and not along or touching the street known as Front street in the town of Wrangell. The approaches to the proposed wharves of both parties are, therefore, outside of the lateral rights of the defendant, based upon the shore line under the bonded warehouse. If we consider the sinuosities of the shore line according to the survey and the line of navigable water, and give consideration to the littoral right of the city and the government, it would seem that the defendant's littoral right of access to deep water, adjusted with that of the littoral proprietors to the north, would be such that the right of defendant would pass across only a corner of the wharf structure erected by the plaintiff at the northwest corner of the warehouse.

The following sketch, showing the shore line under the bonded warehouse and the structure of the parties, illustrates the situation:

A'-B-LL' — CITY LITTORAL RIGHT, APPROX.
A-A'- LL" — GOV'T      "      "      "
B-C-LL — LITTORAL RIGHT CLAIMED  "
A-A'-B-C-D — SHORE LINE

There seems to be some difference in authorities as to the equitable method of adjusting the division of waterfront between riparian and littoral proprietors of the shore line for wharfage or dockage purposes. These differences are, it is said, largely due to varying conditions in each case, rather than to a diversity of opinion as to equitable methods. The purpose in each case is to allot to each shore owner his proportionate share of navigable water frontage. The Massachusetts rule is that, where there is a cove, the equitable method is to draw a line from headland to headland of the cove, and from this line project at right angles lines therefrom to the shore land termini of the several upland proprietors as the division lines between them. In Aborn v. Smith, 12 R. I. 370–372, where the government had established a pier head or harbor line, the court held that an equitable division was to draw a line from the pier head line at right angles therefrom to meet the division line between the plaintiff and defendant at the shore. This method was followed by the Supreme Court of Oregon in Columbia L. & I. Co. v. Van Dusen Investment Co., 50 Or. 59, 91 P. 469, 11 L. R. A. (N. S.) 287, under similar facts.

In Alaska no pier heads or harbor lines have been established, but the principle that the line of navigable water should be taken as the basis of division of frontage seems most equitable, where, as in this case, the indentation or cove is extremely shallow. Upon this theory of division of water frontage, based upon the line of low water which, from the soundings shown on plaintiff's Exhibit No. 1, is approximately parallel with the line of navigable water, it is clear that the division line between the easement of the defendant and the town of Wrangell would cross only the bonded warehouse, intersecting the westerly side of the bonded warehouse about 30 feet south of the northwest corner, and almost entirely clearing the structure erected by the plaintiff at that point, and such structure or platform would be entirely without any littoral right of the defendant by reason of its holding of the upland.

It further appears that the defendant dock company, under the lease, demised to the plaintiff a portion of its wharf property theretofore erected by it. This portion of the wharf property extends from the bonded warehouse in a southerly direction, and is covered by the fish house and the covered passageway, and includes the triangular landing place mentioned in the

lease. From this it appears that there is no method for the defendant to get direct access by a wharf to navigable waters from its upland, without passing either through the bonded warehouse or over the wharf property so leased. So the practical result is that no littoral rights are vested in plaintiff appurtenant to the upland west of the upland property and the bonded warehouse. The situation then resolves itself to this at the time of the commencement of this action: Both parties claim littoral rights of wharfage to deep water for the purpose of commerce and navigation to the west of the bonded warehouse, but the easement claimed of the right of wharfage over the property west of the bonded warehouse lies in neither party.

It further appears that, while the dock company first initiated steps by applying for permission to the War Department to erect its wharf west of the bonded warehouse, yet the plaintiff entered on the tide land in front of the city street and government property and commenced the erection of its wharf first. It took possession of the property without objection from the parties having littoral rights of access across the land, and apparently by the consent of the War Department, although no permit has yet been given. After this structure of the plaintiff was commenced, and during the progress of the work thereon, the defendant commenced the erection of a structure of a temporary character, which, being of comparatively light construction, completely shut off the plaintiff from access to deep water. The form and character of the structure erected by the defendant shows, and Mr. P. C. McCormack, senior partner of the dock company, on the witness stand admitted, that the structure was erected for the purpose of preventing the plaintiff from continuing its dock. The structure of the defendant would seem to be in the nature of a private nuisance, but by the pleadings it does not seem to be claimed as such, and the question recurs whether, under all the circumstances and under the pleadings, there is authority in this court to enjoin the defendant from maintaining the structure so erected by it.

Bearing in mind that, as I have found, neither party has any littoral right over the tide land, it seems to me that I cannot afford the plaintiff or defendant the relief sought by either. In Columbia Canning Co. v. Hampton, 161 F. 60, our appellate court, discussing the question of right of action in cases of this character, used the following language:

"While the owner or locator of lands in Alaska which border upon navigable or tidal waters has, under the general law, the right of access to such waters for the purpose of navigation, he can acquire no right or title in the soil below high-water mark, and he can have therefore no right of possession upon which he can base an action against an intruder whom he charges with interfering with and obstructing him in the erection and use of a structure upon the shore below such high-water mark."

This principle is recognized and reiterated in Sheldon v. Messerschmidt (C. C. A.) 247 F. 105. While it is admittedly the policy of the law to encourage all facilities for commerce and navigation, yet, under the law as laid down by the appellate court, it does not appear to me that a right of action lies in plaintiff to restrain the defendant from continuing the structure so erected by him, or require the removal of the same from the tide lands in his possession. In McCloskey v. Pacific Coast Co. (C. C. A.) 160 F. 794–800, 22 L. R. A. (N. S.) 673, our appellate court, by Judge Gilbert, in discussing littoral rights, says:

"One who has been divested of such littoral rights may not maintain a suit to enjoin obstruction to his access to navigable waters in front of his land, the case coming within the general rule that individuals are not entitled to redress against a public nuisance"—citing Gould on Waters, par. 122.

In this case the parties have each erected structures on tide lands to which neither has the right of possession, and are on such tide lands by sufferance of the town of Wrangell and the government. Each commenced the erection of its structure on tide lands, intending to extend the same into navigable tide waters in front of the town of Wrangell, without having plans for such docks or wharves approved by the War Department, as required by the Act of Congress of March 3, 1899, 30 Stat. 1151 (33 USCA § 403 [U. S. Comp. St. § 9910]); section 57, C. L. A. While each party is occupying a portion of the tide lands, and may remain in possession thereof so long as no action is started against it by the United States or the littoral owner of the upland, yet neither party has a right of action against the other, for the reason that no private right is being trespassed on by the other.

This being my view of the law under the facts in the case, it follows that the relief demanded by the plaintiff cannot be granted, nor can the relief asked by the defendant in its cross-

bill be afforded.  The bill of plaintiff will therefore be dismissed, as well as the cross-bill of the defendant.

Let findings and decree be entered accordingly.