COLUMBIA CANNING CO. et al. v. HAMPTON et al.

(Circuit Court of Appeals, Ninth Circuit. April 7, 1908.)

No. 1,422.

1. NAVIGABLE WATERS—SHORE LANDS—RIGHTS OF RIPARIAN OWNER IN ALASKA.

Under Act May 14, 1898, c. 299, 30 Stat. 409 (U. S. Comp. St. 1901, p. 1412), extending the homestead laws to Alaska, which expressly provides that nothing therein contained shall be so construed as to authorize entries to be made, or title to be acquired to the shore of any navigable waters, a location of land on a shore under the soldiers' additional home-

stead scrip act does not give the proprietor any right in the land lying below the line of ordinary high tide.

2. INDIANS—LANDS—POSSESSORY RIGHTS IN ALASKA.

Act May 17, 1884, c. 53, 23 Stat. 24, extending the mining laws to Alaska, section 8 (p. 26) which provides that Indians or other persons shall not be disturbed in the possession of any lands "actually in use or occupation or now claimed by them," refers only to possession held at the time of its passage, and does not protect possession acquired since.

3. NAVIGABLE WATERS—RIGHTS OF RIPARIAN OWNER.

While the owner or locator of lands in Alaska which border on navigable or tidal waters has under the general law the right of access to such waters for the purpose of navigation, he has no right or title in the soil below high-water mark, and no right of possession which will support an action against an intruder for interfering with or obstructing him in the erection and use of a structure upon the shore below such high-water mark, unless it prevents or obstructs his access to the navigable waters.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Navigable Waters, §§ 246–249.]

4. FISH—PRIVATE RIGHT OF FISHERY IN PUBLIC WATERS—RIPARIAN OWNER IN ALASKA.

An owner or claimant of lands in Alaska which border on navigable waters, having no right to the shore lands, has no exclusive right of fishery in such waters nor to erect and maintain a fish trap either on the shore between high and low water mark, or in the adjacent deep waters to the exclusion of others.

Appeal from District Court of the United States for the First Division of the District of Alaska.

In Equity. This was an action in the court below brought by the appellee W. H. Hampton, as complainant, against appellants, as defendants, to restrain the latter from interfering with or obstructing the plaintiff in the use of the structure which he had commenced to erect for a fish trap at a point on St. Mary's Peninsula on the north shore of Lynn Canal, a navigable arm of the North Pacific Ocean in Alaska. Upon evidence taken before the court a final decree was entered in favor of the plaintiff. Defendants appeal.

R. W. Jennings, T. A. Marquam, and Lorenzo S. B. Sawyer, for appellants.

Jno. R. Winn and Newark L. Burton, for appellee W. H. Hampton.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge. The complainant alleges that on the 19th day of April, 1905, plaintiff entered upon and staked out and surveyed a piece or parcel of land on St. Mary's Peninsula, on the north shore of Lynn Canal, in Alaska. The land described in the complaint has for its southern boundary the meander line of the shore of Lynn Canal at high-water mark. The three other boundary lines, on the north, east, and south, are each 20 chains in length. It is alleged that at the time plaintiff entered upon said land the same was government land, unoccupied, unappropriated, and open to entry, bordering upon the navigable waters and extending down to the line of ordinary high tide of Lynn Canal, navigable water of the North Pacific Ocean; that said entry, staking out, and surveying were done by plaintiff with the intention of obtaining title to said piece of land from the Government

of the United States under what is known as "Soldiers' Additional Homestead Scrip Act," and it was then laid out and entered upon by plaintiff for, among other purposes, building and constructing out from the shore line of said claim into deep water in said Lynn Canal what is known as a fish trap for the purpose of catching salmon; that the location so selected by plaintiff for that purpose was an exceptional one, for the reason that the shore line above and below said location is precipitous and mountainous, and the plaintiff alleges that the waters of Lynn Canal up and down the shore in both directions from said location are so deep and the bottom so rocky that it is impossible to construct a fish trap and maintain or operate the same, and the waters at said point where plaintiff had commenced the construction of said trap abound in salmon, and the fish running in schools along the shore line can be caught in large quantities; that for the purpose of constructing a fish trap immediately in front of said claim so staked out plaintiff on May 9, 1905, engaged the services of a pile driver and obtained piles and piling, and commenced the driving of piles at or near the line of ordinary high tide abutting upon the property described, driving a row of piles the line of which would be at an angle of about 45 degrees with the shore line of said land so staked out, said piles being 11 in number, and placed at a distance of about 10 feet apart; that, after the driving of the 11 piles, work and operations were temporarily suspended, in order that the plaintiff might procure a raft of piles to complete the said trap; that plaintiff was then and at the time of the filing of the complaint ready to go ahead with the construction of said trap, and had all the necessary trap, web, hearts, pots, and spillers for the completion of said trap, and for the running and operation of the same; that favorable locations for fish traps of the kind and nature referred to are scarce and are of great value; and plaintiff alleged that he was entitled to the use of the shore line abutting upon the piece of property so entered by him for the purpose of landing his nets, operating seines, and removing fish from said trap, and for the landing of small boats, skiffs, and scows to be used in said fish business; that the waters in which said piles were driven are waters that had been theretofore unappropriated and unused by any one for fishing or any other purpose; that said waters constitute a common fishery in which prior rights are gained for the purpose of fishing by the first occupant on such ground, and that plaintiff was the first occupant on the same; that after plaintiff had staked out and surveyed the lands described, and procured the services of the pile driver and driven piles as alleged, while plaintiff was absent from the ground for the purpose of securing piles and piling for the completion of the trap, but was in possession of the premises by an agent and employé, defendants, through their agents, servants, and employés, entered upon the ground and tide lands and waters immediately in front of and abutting the land laid out and described as entered by plaintiff, and within a few feet of the southerly side of the line of piles so driven by plaintiff, and drove another line of piles, without the consent and against the will and express wishes of the plaintiff. It is alleged that, unless defendants are restrained by the court, they will proceed to complete their said piling, and will so finish and construct a trap that it

COLUMBIA CANNING CO. V. HAMPTON. 63

will cork the trap of the plaintiff, and prevent plaintiff from catching fish. The threatened injury to plaintiff is stated; and it is alleged that, unless the defendants are restrained from their threatened trespass, plaintiff will suffer irreparable damage. To this complaint the defendants interposed a demurrer, on the ground that the complaint did not state facts sufficient to constitute a cause of action to entitle the plaintiff to the relief sought, or to any relief. The court overruled the demurrer. This action of the court is assigned as error.

Plaintiff's entry and location of the tract of land under the provisions of law relating to the acquisition of title through soldiers' additional homestead rights gave him no possessory right to the shore in front of or abutting upon such location. Act Cong. May 14, 1898, c. 299, 30 Stat. 409 (U. S. Comp. St. 1901, p. 1412), "extending the homestead laws and providing for right of way of railroads in the District of Alaska, and for other purposes," provided specifically in section 1 that nothing therein contained should "be so construed as to authorize entries to be made, or title to be acquired, to the shore of any navigable waters within said district." Plaintiff alleged in his complaint that his entry and location of the upland under the soldiers' additional homestead scrip act was for, "among other purposes, building and constructing out from the shore line of said claim into deep water in said Lynn Canal what is known as a fish trap," and in carrying out this purpose he "commenced the driving of piles at or near the line of ordinary high tide." This structure of piles which he designed for a fish trap was intended, therefore, to commence at the shore line of ordinary high tide, and to extend out into deep water. Plaintiff also alleged that he was entitled to the use of the shore line abutting upon the piece of property so entered by him for the purpose of landing his nets, operating seines, and removing fish from said trap, and for the landing of small boats, skiffs, and scows to be used in said fish business. The shore is that ground that is between ordinary high-water and low-water mark. Shively v. Bowlby, 152 U. S. 1, 12, 14 Sup. Ct. 548, 38 L. Ed. 331. Plaintiff's claim as alleged in his complaint, was therefore to occupy the shore between high tide and low tide abutting upon his upland location as a basis for the purpose of carrying on the fishing business, in connection with a fish trap extending out into the navigable waters of Lynn Canal. The plaintiff could acquire no possessory right, under the act of May 14, 1898, to occupy this shore for the purpose of carrying on the fishing business or for a fish trap, and he had no right of possession of such shore under the act upon which he could base an action against the defendants for interfering with or obstructing him in the use of such shore.

Act May 17, 1884, c. 53, 23 Stat. 24, 26, establishing a civil government in Alaska, provided, in section 8, for a land district in the territory, and extended the laws of the United States relating to mining claims to the district. It was further provided in section 8:

"That the Indians or other persons in said district shall not be disturbed in the possession of any lands actually in use or occupation or now claimed by them but the terms under which such persons may acquire title to said lands is reserved for future legislation by Congress."

The act clearly refers to the possession held at the time of the passage of that act by Indians and other persons in the District of Alaska, and it was such possession that was not to be disturbed. It did not provide for the protection of the possession of any lands by any person or persons who might acquire possession or make claim thereto after that date. Heckman v. Sutter, 128 Fed. 393, 395, 63 C. C. A. 135. The possession which the plaintiff alleges he acquired in April 1905, was therefore not a possession recognized or in any way protected by the act of May 17, 1884. The littoral right attached to plaintiff's homestead location entitled him to free access to the navigable waters of Lynn Canal, but not to build upon the shore or erect any structure reaching out into deep water so as to obstruct navigation. In Gould on Waters (3d Ed.) § 149, this right is stated as follows:

"But a littoral proprietor, like a riparian proprietor, has a right to the water frontage belonging by nature to his land, although the only practical advantage of it may consist in the access thereby afforded him to the water for the purpose of using the right of navigation. This right of access is his only, and exists by virtue and in respect of his riparian property. It exists in the case of tide waters, even where the shore is the sovereign's property, both when the tide is out and when it is in. It is distinct from the public right of navigation, and an interruption of it is an encroachment upon a private right, whether caused by a public nuisance or authorized by the Legislature."

In Hardin v. Jordan, 140 U. S. 371, 381, 11 Sup. Ct. 808, 838, 35 L. Ed. 428, Mr. Justice Bradley said:

"With regard to grants of the government for lands bordering on tide water, it has been distinctly settled that they only extend to high-water mark, and that the title to the shore and lands under water in front of lands so granted inures to the state within which they are situated, if a state has been organized and established there. Such title to the shore and lands under water is regarded as incidental to the sovereignty of the state—a portion of the royalties belonging thereto and held in trust for the public purposes of navigation and fishery—and cannot be retained or granted out to individuals by the United States."

In Shively v. Bowlby, 152 U. S. 1, 58, 14 Sup. Ct. 548, 38 L. Ed. 331, Mr. Justice Gray, discussing this same question, said:

"Grants by Congress of portions of the public lands within a territory to settlers thereon, though bordering on or bounded by navigable waters, convey of their own force no title or right below high-water mark, and do not impair the title and dominion of the future state when created; but leave the question of the use of the shores by the owners of uplands to the sovereign control of each state, subject only to the rights vested by the Constitution in the United States."

It follows from these authorities that while the owner or locator of lands in Alaska which border upon navigable or tidal waters has, under the general law, the right of access to such waters for the purpose of navigation, he can acquire no right or title in the soil below high-water mark, and he can have therefore no right of possession upon which he can base an action against an intruder whom he charges with interfering with and obstructing him in the erection and use of a structure upon the shore below such high-water mark. He may have, however, a right of action against an intruder who places ob-

stacles on the shore that prevent him from having access to the navigable waters; but that is not this case. The plaintiff does not charge that defendants' structure is a nuisance, or that the defendants are obstructing him in having access to the navigable waters of Lynn Canal. The charge is that defendants are erecting on the shore a structure of piles for a fish trap which will be an obstruction to a similar structure which the plaintiff had commenced to erect. This is not the statement of a cause of action under the general law relating to littoral rights, nor under any statute relating to the waters of Alaska to which our attention has been called.

There remains but one other question to be considered and that is plaintiff's right to take possession of the shore for the purpose of erecting a fish trap in the exercise of the public right of fishing. In support of this claim, portions of section 394 of 2 Farnham on Waters and Water Rights is cited as authority. The section refers to various circumstances and conditions under which fishing rights have been claimed in the waters of a number of states, and such claims sanctioned or denied by the courts, as shown by the cases cited. It would extend this opinion unnecessarily to discuss those cases cited by the author as supporting the text, which it is contended recognizes plaintiff's right as claimed in this case. It is sufficient to say that we do not find in the text of section 394 or any of the cases cited any authority for the right claimed by plaintiff to erect a structure on the shore or in the adjoining deep water for fishing purposes, with the right to exclude the defendants therefrom under the circumstances and conditions of this case. But, turning to section 375 of the same work, we find clearly stated the law applicable to this case. The author says:

"An exclusive right of fishery in the water adjacent to property is not one of the rights of the riparian owner. He can claim such right only when he owns the soil under the water, or the right has been expressly conferred upon him."

In support of this doctrine the author cites Tinicum Fishing Co. v. Carter, 61 Pa. 21, 100 Am. Dec. 597; Arnold v. Mundy, 6 N. J. Law, 4, 10 Am. Dec. 356; Shrunk v. Schuylkill Nav. Co., 14 Serg. & R. (Pa.) 71; Skinner v. Hettrick, 73 N. C. 53; Collins v. Benbury, 25 N. C. (3 Ired. L.) 277, 38 Am. Dec. 722. The case of the Pacific Steam Whaling Company v. Alaska Packers' Association, 138 Cal. 632, 636, 72 Pac. 161, is also a case in point. It was there said by the Court:

"The right of fishery in the waters of the ocean, whether in the open sea or where the waters ebb and flow over tide lands, is a public right which may be exercised by any citizen. Shively v. Bowlby, 152 U. S. 1, 14 Sup. Ct. 548, 38 L. Ed. 331, and cases there cited; Hardin v. Jordan, 140 U. S. 371, 11 Sup. Ct. 808, 838, 35 L. Ed. 428; Mann v. Tacoma Land Co., 153 U. S. 273, 14 Sup. Ct. 820, 38 L. Ed. 714. In its very nature the exercise of the right of fishing in the public waters of the ocean is not, and cannot be, exclusive. Its exercise, no matter by whom or for what length of time, is only the exercise of a public right. There can be no possession for the purpose of fishery of an area of land covered by the waters of the ocean that is at all analogous to an actual possession of a tract of upland which might give the possessor a right of action against a mere trespasser. One who exercises this public right of fishery in the sea does not by that act make himself a trespasser. We need not inquire to what extent the government—either federal or state—could give an

exclusive private right of fishery in such public waters. No such right is asserted here."

We are of opinion that the complaint did not state facts sufficient to constitute a cause of action, and that the demurrer should have been sustained. Decree reversed, with directions to the court below, to sustain the demurrer and dismiss the complaint.