## BERGER v. OHLSON et al.

### No. 9554.

Circuit Court of Appeals, Ninth Circuit.

May 14, 1941.

Rehearing Denied Aug. 4, 1941.

W. N. Cuddy and Roy Bunn, both of Anchorage, Alaska, and McMicken, Rupp & Schweppe, Otto B. Rupp, Alfred J. Schweppe, and J. Gordon Gose, all of Seattle, Wash., for appellant.

Norman M. Littell, Asst. Atty. Gen., Joseph W. Kehoe, U. S. Atty., of Seward, Alaska, and Vernon L. Wilkinson, John P. Hearne, Frank J. Dugan, and Roger P. Marquis, Attys. Department of Justice, all of Washington, D. C., for appellees.

Before WILBUR, GARRECHT, and HEALY, Circuit Judges.

WILBUR, Circuit Judge.

This is a suit by appellant against appellees to enjoin them from preventing him from discharging cargo over the "City Dock" near Anchorage, Alaska, and hauling it to the city over a roadway across land owned by the government, without the payment of wharfage fees claimed by appellees, O. F. Ohlson, general manager, and J. T. Cunningham, as acting general manager, of the government owned and operated Alaska Railroad. This dock is located on the south side of Ship Creek, a small tidal stream which empties into Knik Arm at the head of Cook Inlet, which connects with the Gulf of Alaska.

Appellant is engaged in transporting goods by water from Seattle to Anchorage. For some time he has been using small boats (carrying 70 to 118 tons) discharging over the "City Dock", but recently has undertaken to use larger boats (carrying 1,000 tons) lightering the cargo to the City Dock.

The defendants have not objected to the use of the City Dock for discharging small boats but in using larger boats and lightering cargo to the City Dock appellant seriously competes with the Alaska Railroad, which is also engaged in transporting goods from Seattle to Anchorage. The Railroad's service between these cities is maintained through its connection with water transportation at Seward. Goods are brought from Seattle to Seward by water and carried from Seward to Anchorage by rail. To overcome this competition appellees demanded wharfage from plaintiff for the use of the City Dock according to the rates fixed for the use of the Railroad docks at Anchorage.

In May, 1938, while appellant was engaged in landing a cargo of building materials at the City Dock, the roadway from the dock to Anchorage, for which these materials were destined, was blocked by appellees by placing coal cars on the railroad tracks across the roadway to enforce payment of the wharfage fees prescribed by the railroad's terminal tariff applicable to the wharves of the railroad at Anchorage. Appellant thereupon obtained a temporary injunction against the roadway obstruction. Appellees thereupon placed special agents on the City Dock who prevented the removal of appellant's cargo then on the dock until he paid, under protest, the wharfage fees demanded. Informed by appellees that similar charges

would be exacted on future shipments unloaded at the City Dock from large boats, appellant brought the present action to restrain appellees from interfering with his use of the City Dock and from obstructing the roadway to Anchorage. After hearing the court entered its decree dissolving the temporary injunction and refusing a permanent injunction. From that decree this appeal has been taken.

Appellees contend that in thus interfering with appellant's transportation business by exacting a wharfage fee for his use of the City Dock they were acting in the exercise of lawful authority. They contend that this dock is the property of the United States and under their control as operating officials of the Alaska Railroad. Appellant contends that the City Dock is not the property of the United States but of the City of Anchorage; that, regardless of the ownership of the dock, it was in no sense a part of the Alaska Railroad or one of its operating facilities and that, therefore, the appellees, as operating officials of that railroad, had no authority to exact a wharfage fee for its use.

■ Before considering the merits of these opposing contentions it will be convenient to consider a preliminary procedural question. Appellees contend that, owing to the question as to the ownership of the dock by the United States or the City of Anchorage, the United States is an indispensable party and, hence, that the case should have been dismissed since the United States was not a party and could not be made a party without its consent. But this is not an action to quiet the title of the City of Anchorage as against the United States or to establish any right of the appellant as against the United States. It is an action to enjoin the alleged tortious misconduct of the appellees in interfering with the appellant's business of lightering ships by preventing him from using a dock necessary to that business. They cannot escape personal liability by relying upon the sovereign's immunity from suit. When their authority is in question the United States is not an indispensable party, although its title to property may be incidentally involved. This action can conclude nothing against the United States, but it can and must determine the rights of appellant and appellees as between themselves. United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171; Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A.,N.S., 932, 14 Ann.Cas. 764; Ickes v. Fox, 300 U.S. 82, 57 S.Ct. 412, 81 L.Ed. 525. The appellant questions the right of the President and Secretary of the Interior and their agents and employees operating the Alaska Railroad to interfere with his business. He does not claim that the President, through the Secretary of the Interior, has not delegated to the defendants any power that he possesses to do so. We now proceed to consider the merits of appellant's claim.

A major subject of dispute is the ownership of the "City Dock". It was built by the City of Anchorage with the knowledge and encouragement of the officials of the Alaska Railroad and without objection from any official governmental source. Up to the time of the occurrences which are the subject of this suit it was maintained by the city as a free public wharf. Appellant contends that the city owns the dock and that he is therefore privileged to use it. The appellees maintain that by reason of certain congressional legislation and executive order it is a terminal facility of the Alaska Railroad and the property of the United States and therefore subject to their control.

About one-third of the dock is on the upland above the line of mean high tide; the other two-thirds is in Ship Creek below that line. The appellant claims that the Terminal Reserve set aside by the President for the use of the railroad is bounded by this high tide line, that is, that the boundary of the Reserve meanders along the high tide line of Ship Creek. The appellees claim that the line crosses Ship Creek at its junction with Knik Arm and, consequently, both upland and tide land at the City Dock is within the Terminal Reserve.

An executive order of August 31, 1915, establishes the Railroad Terminal Reserve and defines its boundaries. After defining it in such a way as to include lands to the north, east and south of Ship Creek, it uses these words in defining the western boundary: " * * * thence southwesterly along ordinary high water mark on the eastern shore of Knik Arm and crossing the mouth of Ship Creek to the northwest corner of Anchorage Townsite; * * *".

■■ A fair reading of that description clearly includes Ship Creek within the Alaska Railroad Terminal Reserve, for, as shown by the passage quoted, it makes the boundary line, following the eastern shore

of Knik Arms, cross the mouth of Ship Creek, which, as previously stated, empties into Knik Arm. This construction is strongly reinforced by another item of the description which states that the acreage of the Reserve thus created is 551 acres. That this acreage is entirely consistent with the view that Ship Creek was included in the Reserve, and altogether inconsistent with the contention that it was excluded, is not disputed. Moreover, this construction is in strict accordance with the established rule that in surveying boundaries defined by streams or other waters the line should always "follow the stream or body of water crossing the mouth of affluents or other inlets from headland to headland." City of Oakland v. Oakland Water Front Co., 118 Cal. 160, 175, 50 P. 277, 282; Knight v. United Land Ass'n, 142 U.S. 161, 207, 12 S.Ct. 258, 35 L.Ed. 974. Finally, it is to be observed, that there is in evidence an official map made at the time of the survey of the reservation in 1915 which shows the line of the Reserve crossing Ship Creek at its mouth and thus including Ship Creek within the body of the Reserve.

The appellant's contention that the high tide along Ship Creek is the boundary of the railroad terminal reserve is based in part upon the theory that as the tide land below high tide line was not originally within the Chugach Forest Reserve it must follow that in carving the railroad terminal reserve out of the Forest Reserve, the tide lands were not included in the Railroad Terminal Reserve. This contention is not tenable. The facts are that both the site of the dock and the present townsite of Anchorage were at one time included in the Chugach National Forest as established by Presidential proclamation in 1909. The boundary of this forest was changed by President Wilson's order of August 2, 1915, which, so far as here applicable, provided that the boundary should run: "Thence down the south bank of Knik River and Southwesterly along the eastern shore of Knik Arm, at high tide line, to Point Campbell."

Appellant, stressing the words "at high tide line", argues that this description had the necessary effect of excluding from the Forest Reserve every portion of Ship Creek that is below the high tide line. His next step is to point out what he maintains is the necessary effect of the executive order of August 31, 1915, which established the boundaries of the Alaska Terminal Reserve, upon which appellees also rely. The language of the order was that the lands incorporated in the Reserve "be excluded from the Chugach National Forest." His argument is that since the portion of Ship Creek which is below high tide line was not within the Forest Reserve it could not have been "excluded" therefrom and placed in the Railroad Terminal Reserve by the proclamation and, consequently, that the portion of the dock which is below the high tide line was not included within the Railroad Terminal Reserve. This argument appears to have been accepted by the trial court which, citing decisions of this court concerning the rights of littoral owners in subjacent tide lands (Sheldon v. Messerschmidt, 9 Cir., 247 F. 104; Decker v. Pac. Coast S.S. Co., 9 Cir., 164 F. 974; Columbia Canning Co. v. Hampton, 9 Cir., 161 F. 60) and treating the Alaska Railroad as a littoral proprietor, held that its officials as agents of the littoral owner had no control over the lower two-thirds of the City Dock which was below the high tide line.

Had the government not owned the tide lands along Ship Creek or had the President been restricted in his authority when creating the Railroad Terminal Reserve, to lands previously included in the Chugach National Forest, appellant's argument based upon the boundaries of the Forest as changed by the proclamation of August 2, 1915, would be more persuasive; but the President was not thus restricted. His statutory authority was to make reservation of railroad terminal grounds out of "the lands of the United States in the Territory of Alaska". Act of March 12, 1914, c. 37, 38 Stat. 305, 307, 48 U.S.C.A. § 304.

There was therefore nothing to prevent the President from including in his order of August 31, 1915, the entire area described therein, whether carved out of the Chugach National Forest or not.

That Ship Creek, including the portion of it which is below the high tide line, is within the Alaska Railroad Terminal Reserve is an inescapable conclusion. It necessarily follows that the whole of the City Dock is in the Reserve. It was therefore built upon land belonging to the United States and must in legal contemplation have become a part of it in the absence of special circumstances leading to a

contrary conclusion. No specific authority for the erection of the wharf as property of the city of Anchorage can be found in the record. The appellant claims that by virtue of the chartered powers of the city of Anchorage, as granted and defined by § 2383, subs. 3 and 5 of the Compiled Laws of Alaska, authorizing the construction of wharves, and by virtue of § 44a, 48 U.S.C.A., passed in 1936, giving cities in Alaska power to issue bonds for the purpose of erecting wharves, the city has a right to build and maintain a wharf on the tide lands within the Railroad Reserve. The appellees call attention to the fact that the Act of 1936 was passed after the construction of the City Dock. We may assume that this legislation would in effect ratify an occupation of tide lands, if it were intended as a grant of such right. But neither that act of the Alaskan legislature, nor the act of Congress (48 U.S.C.A. § 44a, supra) has to do with the granting of rights in tide lands, nor would they have that effect. These statutes assume that the city will acquire the rights of occupancy necessary to construct wharves, as a preliminary to their construction. Moreover, if we assume that otherwise these acts would permit such use, manifestly they would not authorize such use in a reserve already set apart by the government for the use of its railroad. But appellant contends that the dock is nevertheless the property of the City of Anchorage. In so doing he relies upon estoppel, pointing out that the dock was built with the knowledge and approval of Alaska Railroad officials. But the Alaska Railroad is not a corporate or any other legal entity. It is a name only. The sole owner of the railroad and its terminals, as well as the Terminal Reserve, is the United States.

Appellant concedes that according to the general rule there can be no estoppel against the United States; but, citing cases which recognize for some purposes a distinction between the purely governmental and the quasi-proprietary actions of the sovereign, he argues that when, as in the case of the Alaska Railroad, the government acts as a proprietor, it must be subject to the ordinary rules of estoppel. We are of opinion that the cases cited do not support such an exception to the established rules.

■ We conclude that at best the public of the City of Anchorage had a mere license to use the City Dock, and that the United States had a right to terminate the use of the dock and that the defendants did so.

The trial court held that the plaintiff had a right to use the City Dock, but that the defendants acted within their rights in excluding the plaintiff from the roadway leading thereto unless an amount equivalent to wharfage was paid. The plaintiff contends that the roadway was public; that an act of Congress granted rights of ingress and egress from lands within a Forest Reserve (16 U.S.C.A. § 478), but the appellees point out that the townsite of Anchorage was excluded from the Forest Reserve in April 1914, before the road was built or used. The construction and use began in July, 1915. We find it unnecessary to pass upon the right of the appellant or of the public to use the roadway leading to the City Dock because the record clearly shows that the real controversy between the parties is to the use of the City Dock and defendants' interference with the use of the road was incidental to the assertion of that right. The defendants' objection was to the hauling of cargo from large competitor vessels over the road where it had passed over the dock without paying wharfage fees. Whether the defendants could rightly condition their consent to the use of the City Dock and Roadway upon the payment of an amount equivalent to the wharfage charged at the docks of the Alaska Railroad is not passed upon by us. The court was asked to enjoin any interference with the use of the City Dock and Roadway by the plaintiff. As the defendants had a right to forbid any use of the City Dock by the plaintiff it could not enjoin them from so doing.

As we understand the record the appellees have always permitted the plaintiff and others to use the roadway to transport cargo discharged over the wharf from his smaller vessels.

Our decision as to the right to use the dock makes it unnecessary to pass upon the appellant's right to use of the road to transport cargo from the dock.

Decree affirmed.