570

UNITED STATES et al. v. BERGER et al.

No. A–3132.

District Court of Alaska. Third Division. Anchorage.

Aug. 13, 1945.

Noel K. Wennblom, of Anchorage, for plaintiffs.
Edward L. Arnell, of Anchorage, for defendants.

DIMOND, District Judge.

This cause came on for hearing upon the action of the plaintiffs for an order of default against the defendants upon the ground that the defendants have failed to answer the plaintiffs' complaint within the time required by law or at any time prior to the filing of the motion for order of default; and upon the oral motion made by plaintiffs' counsel during the argument on the motion for order of default, that the separate answers of each of the defendants filed herein on August 1, 1945, except as to defendant Mc-Donald which was filed on August 3, 1945, be stricken upon the grounds, first, that the answers were filed after the motion for order of default had been made and was pending; second, that no leave was applied for nor was any leave granted by the court to file the answers; third, that the answers are filed too late to come within the provisions of rule 11 of this court, which provides that a party may respond to any pleading at any time before a default is claimed; and fourth, that the answers do not present any defense to the cause of action set forth in the complaint.

Litigation between the parties to this action on the same general subject matter has been in existence for a long time. An examination of the record shows that such litigation was commenced on May 29, 1938, in a suit in which Heinie Berger, one of the defendants in the current action, was plaintiff, and O. F. Ohlson, one of the plaintiffs in the current action, and another, were defendants. Berger v. Ohlson, No. A–1053, 9 Alaska 389, 605.

That suit was brought to enjoin the defendants from interfering with the operations of the plaintiff who was then attempting to discharge cargo from an ocean-going ship onto a dock known as the City Dock, situated partly below and partly above the mean high tide line of Cook Inlet on the Anchorage waterfront, on reserved lands owned by the United States, and transporting such cargo from the point of discharge on the dock across such reserved lands to the City of Anchorage, without paying the customary wharfage charges. Upon the complaint and other supporting papers an order to show cause was granted and at a hearing on that order the court, on June 3, 1938, issued a temporary injunction enjoining and restraining the defendants from interfering with the operations of the plaintiff Berger, conditioned upon the requirement that plaintiff should furnish a bond in the sum of $7,500 for the payment of the costs and disbursements and damages suffered by the defendants in case it should be finally determined that the plaintiff was not entitled to such injunction. The injunction bond, executed by C. M. Wells, Winfield Ervin, Sr., and R. E. McDonald, defendants in the current action, as sureties, was approved and filed in court on June 18, 1938.

But not until August 18, 1939, was trial on that cause on the merits concluded, and at the conclusion of the trial the court reserved decision. The opinion of the court, holding generally in favor of defendants and against plaintiff Berger, was filed in court on September 30, 1939. 9 Alaska 605. Findings of fact and conclusions of law were signed by the court and filed on January 4, 1940, and the decree was in like manner signed and entered on January 6, 1940.

The plaintiff having appealed from the decree to the United States Circuit Court of Appeals for the Ninth Circuit, the opinion of that court directing affirmance of the decree was rendered on May 14, 1941. The following is quoted from the opinion:

"That Ship Creek, including the portion of it which is below the high tide line, is within the Alaska Railroad Terminal Reserve is an inescapable conclusion. It necessarily follows that the whole of the City Dock is in the Reserve. It was therefore built upon land belonging to the United States and must in legal contemplation have become a part of it in the absence of special circumstances leading to a contrary conclusion. * * *

"We conclude that at best the public of the City of Anchorage had a mere license to use the City Dock, and that the United States had a right to terminate the use of the dock and that the defendants did so.

"The trial court held that the plaintiff had a right to use the City Dock, but that the defendants acted within their rights in excluding the plaintiff from the roadway leading thereto unless an amount equivalent to wharfage was paid. The plaintiff contends that the roadway was public; that an act of Congress granted rights of ingress and egress from lands within a Forest Reserve (16 U.S.C.A. 478), but the appellees point out that the townsite of Anchorage was excluded from the Forest Reserve in April 1914, before the road was built or used. The construction and use began in July, 1915. We find it unnecessary to pass upon the right of the appellant or of the public to use the roadway leading to the City Dock because the record clearly shows that the real controversy between the parties is to the use of the City Dock and defendants' interference with the use of the road was incidental to the assertion of that right. The defendants' objection was to the hauling of cargo from large competitor vessels over the road where it had passed over the dock without paying wharfage fees. Whether the defendants could rightly condition their consent to the use

of the City Dock and Roadway upon the payment of an amount equivalent to the wharfage charged at the docks of the Alaska Railroad is not passed upon by us. The court was asked to enjoin any interference with the use of the City Dock and Roadway by the plaintiff. As the defendants had a right to forbid any use of the City Dock by the plaintiff it could not enjoin them from so doing." Berger v. Ohlson, 9 Cir., 120 F.2d 56, 59, 10 Alaska 84.

Not until November 12, 1941, was motion for judgment on mandate filed in this court, and not until October 5, 1942, was judgment on mandate rendered and entered in this court.

The present suit was thereupon begun on April 24, 1943, seeking to recover from the defendant Berger, the plaintiff in the original action, and from the defendants Wells, Ervin and McDonald, sureties on plaintiffs' injunction bond above mentioned in that action, the sum of $5,627.02 as wharfage or "damages," for the cargo landed upon and moved across the City Dock and the lands adjacent thereto by Berger while the temporary injunction remained in full force and effect.

The complaint in this case as filed set up two causes of action, only the first of which need now be considered because the second was stricken by order of this court and is not now before us. The first cause of action claims the sum of $5,627.02 to be due to plaintiffs as wharfage charges at the "rates published by the Interstate Commerce Commission." The second cause of action was based, not upon wharfage charges specified by the Interstate Commerce Commission, but upon the quantum meruit for the use of the plaintiffs' premises by the defendants for the landing and transportation of cargo, such use alleged to be reasonably worth $5,627.02.

The averments of the first cause of action of plaintiffs' complaint with respect to the amount claimed, as stated in paragraph 20 and 22 of the first cause of action in said complaint, are as follows:

(20) "That from the 22nd day of June, 1938, to the 6th day of May, 1940, both dates inclusive, and while said temporary injunction remained in full force and effect, the said Heinie Berger landed and moved cargo on and across said 'City Dock' and the lands adjacent thereto, all being within said 'Alaska Railroad Terminal Reserve' and without paying wharfage thereon as follows:

| Miscel. | Bill | 27 | dated | 6–22–38 | Wharfage | $6.00 |
|---|---|---|---|---|---|---|
| " | | 30 | " | 7–9–38 | " | 1,122.57 |
| " | | 35 | " | 7–11-38 | " | 54.45 |
| " | | 37 | " | 8–3-38 | " | 27.07 |
| " | | 39 | " | 8–10-38 | " | 1,180.24 |
| " | | 40 | " | 8–10-38 | " | 8.40 |
| " | | 44 | " | 9–15-38 | " | 389.50 |
| " | | 45 | " | 9–16-38 | " | 1,112.78 |
| " | | 46 | " | 9–21-38 | " | 156.00 |
| " | | 53 | " | 10–15-38 | " | 1,122.63 |
| " | | 54 | " | 10–15–38 . | " | 267.60 |
| Bill | | 1348 | " | 7–12–39 | " | 12.00 |
| " | | 1673 | " | 10–20–39 | " | 111.38 |
| " | | 2288 | " | 5–6–40 | " | 56.40 |

$5,627.02

That said sum of $5,627.02 represents the total wharfage on all the cargo moved and landed, as aforesaid, at the rates published by the Interstate Commerce Commission effective at that time for docks and wharves of the Alaska Railroad at Anchorage, Alaska; that demand has been made upon all the said defendants for said wharfage charges, but that no part thereof has been paid and the whole thereof now remains due and owing the plaintiffs from said defendants."

(22) "That by reason of the facts and circumstances herein alleged, plaintiffs have been damaged in the sum of Five Thousand Six Hundred Twenty Seven Dollars and Two Cents ($5,627.02)."

A brief historical record of the current litigation is as follows:

1. Complaint filed April 24, 1943.

2. Demurrer of defendant C. M. Wells to complaint "on the grounds that said cause fails to state facts sufficient to constitute a cause of action against said defendant", filed May 16, 1943.

3. Demurrer of defendant R. E. McDonald to complaint, upon same ground, filed May 25, 1943.

4. Motion of defendant Heinie Berger to strike second cause of action stated in plaintiffs' complaint, upon the ground "that said cause of action is duplicitous, inconsistent, immaterial and redundant," filed August 11, 1943.

5. Demurrer of defendant Winfield Ervin, Sr., to plaintiff's first cause of action, upon the ground "that said cause does not state facts sufficient to constitute a cause of action against this defendant," filed August 11, 1943.

6. Minute order of court as follows: "It is ordered that defendant's demurrer to plaintiff's complaint in cause No. A–3132 entitled, United States of America et al., Plaintiff, versus Heinie Berger et al., Defendant, be and it is hereby, overruled." (No exception taken or allowed.) Entered October 30, 1943.

7. Written order of court as follows: "It is hereby ordered that the defendants' motion to strike the plaintiffs' second cause of action in the above entitled cause be, and the same is, hereby sustained." (No exception taken or allowed.) Entered October 30, 1943.

8. Written order of court overruling demurrer of defendant R. E. McDonald to the plaintiffs' complaint. (No exception taken or allowed.) Entered December 7, 1943.

9. Written order of the court overruling the demurrer of defendant Winfield Ervin, Sr., "to plaintiffs' complaint herein." (No exception taken or allowed.) Entered December 7, 1943.

10. Written order of court overruling the demurrer of defendant C. M. Wells "to plaintiffs' complaint herein." (No exception taken or allowed.) Entered December 7, 1943.

11. Minute order of court as follows: "Now at this time, on the Court's own motion, the plaintiffs not being represented by counsel and the defendants being represented by Edward L. Arnell, Esq., of their counsel, good cause appearing therefor, It is ordered that the plaintiffs in cause No. A–3132, entitled United States of America et al., plaintiffs, v. Heinie Berger et al., defendants, be, and they are hereby, granted 30 days in which to file an amended complaint." Entered March 1, 1944.

12. Minute order of court as follows: "Now at this time on the Court's own motion, plaintiff represented by Raymond E. Plummer, Assistant United States Attorney: It is ordered, that cause No. A–3132 entitled United States of America, The Alaska Railroad, and J. T. Cunningham, individually, and as Acting General Manager of the Alaska Railroad and Superintendent of Transportation, plaintiffs, v. Heinie Berger, C. M. Wells, Winfield Ervin, Sr., and R. E. McDonald, Defendants, be and the same is hereby dismissed." (No exception taken or allowed.) Entered October 9, 1944.

13. Order allowing appeal, entered January 8, 1945.

14. Opinion granting motion "to reverse a judgment dismissing appellants' complaint," of C.C.A., filed in that court June 8, 1945. 150 F.2d 56.

15. Motion for judgment pursuant to mandate, filed July 28, 1945.

16. Judgment pursuant to mandate, entered July 28, 1945.

17. Motion for order of default with supporting affidavit of Noel K. Wennblom, filed July 28, 1945.

18. Notice of hearing on motion for default, filed July 30, 1945.

19.  Separate answers of defendants Heinie Berger, C. M. Wells, Winfield Ervin, Sr., filed August 1, 1945.

20.  Separate answer of defendant R. E. McDonald filed August 3, 1945.

It thus appears that although the defendants' demurrers to the plaintiffs' first cause of action were overruled by written orders of the court on December 7, 1943, and although none of the defendants thereafter answered or otherwise pleaded to the first cause of action before the appeal was taken, and although the order dismissing the case from which the appeal was taken was not entered until October 9, 1944, no motion for default was made against any of the defendants prior to taking the appeal.  Not until after the case had been decided in the Appellate Court and the order of the District Court dismissing the case was reversed, and immediately after the entry of judgment on the mandate in this court on July 28, 1945, did the plaintiffs, on the same day, serve and file a motion for order of default with supporting affidavit.  Four days later, on August 1, 1945, the defendants Berger, Wells and Ervin, and six days later, on August 3, 1945, the defendant McDonald, without leave of court requested or granted, filed herein their separate answers to the first cause of action of the complaint.

The defendants' denials stated in their several answers are technically adequate, denying as they do "each and all the allegations" of the several paragraphs referred to.  That such a pleading is sufficient is indicated by the following from the Circuit Court of Appeals for the Ninth Circuit:

"A general denial (as of 'each and every allegation therein contained') puts in issue every allegation of the pleading which it denies, and can never be construed as a negative pregnant."  McGrath v. Valentine, 9 Cir., 167 F. 473, 476, 3 Alaska Fed. 285.  (An Alaskan case.)

During the course of the argument on the motions it was suggested by counsel for defendants that the failure of the defendants to answer the plaintiffs' first cause of action, after the demurrers were overruled, was the result of an

understanding that the plaintiffs intended to file an amended complaint. Although the second cause of action had been stricken from the complaint by order of the court, it is not now clear why the filing of an amended complaint should have been considered in any event. But the suggestion has some support in the fact that although the orders of the court overruling the several demurrers were entered on December 7, 1943, and the order dismissing the action was not made until October 9, 1944, more than 10 months after the demurrers were overruled, no attempt was made, by motion for default or otherwise, to bring the cause to issue by default judgment or to require the plaintiffs to answer the first cause of action of the complaint which had been sustained by the court. Moreover we find from the record that on March 1, 1944, nearly 3 months after the demurrers were overruled, the court, of its own motion, and the plaintiffs not being represented by counsel, made a minute order granting 30 days "In which to file an amended complaint" although no request had been made therefor.

In such cases, involving claimed defaults, the district court is vested with a wide discretion. However it is plain, from the statutory provisions on the subject, the rules of court, and the adjudicated cases, that such discretion always should be exercised with a view to effecting justice. The relevant code provisions are embraced in section 3455, as amended by Laws 1935, c. 50, and sections 3457, 3461 and 3674 of the Compiled Laws of Alaska 1933, and the applicable rules of this court are numbered 10, 11 and 27. All are quoted in full below, except section 3674, of which the presently relevant portions only are set out:

"Sec. 3455. Amendments and pleading over after demurrer. After the decision upon a demurrer, if it be overruled, and it appears that such demurrer was interposed in good faith, the court may, in its discretion, allow the party to plead over upon such terms as may be proper. If the demurrer be sustained the court may, in its discretion, allow the party to amend the pleading demurred to, upon such terms as may be proper."

"Sec. 3457. Court may enlarge time to plead, or relieve party from judgment. The court may likewise, in its discretion and upon such terms as may be just, allow an answer or reply to be made or other act to be done after the time limited by this code, or by an order enlarge such time; and may also, in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect."

"Sec. 3461. No error to be regarded unless it affect substantial rights. The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party."

"Sec. 3674. When judgment may be given for want of answer. Judgment may be had upon failure to answer, as follows:

"When the time for answering the complaint has expired and it appears that the defendant, or one or more of several defendants, in the cases mentioned in section 3407, has been duly served with the summons and has failed to answer the complaint, the plaintiff shall be entitled to have judgment against such defendant or defendants—

"First. In an action arising upon contract for the recovery of money or damages only; if no answer has been filed with the clerk of the court within the time specified in the summons, or such further time as may have been granted by the court or judge thereof, the clerk, upon the application of the plaintiff made in writing and filed with the clerk, shall enter the default of the defendant, and immediately thereafter enter judgment for the amount specified in the summons, including the costs of the plaintiff, or against one or more of several defendants, in cases provided for in section 3407.

"Second. In other actions, if no answer has been filed with the clerk of the court within the time specified in the summons or such further time as may have been granted

by the court or judge thereof, the clerk shall, upon the written motion of the plaintiff being filed, enter the default of the defendant, and thereafter the plaintiff may apply at the first or any subsequent term of the court for the relief demanded in the complaint; and the court shall, upon such demand, give judgment for the amount claimed in the summons, or the relief demanded in the complaint, unless it be necessary, to enable the court to give judgment or carry the same into effect, to take proof of any matter of fact, in which case the court may order the entry of judgment to be delayed until such proof be taken. The court may hear the proof itself, or make an order of reference, or order that a jury be called to inquire thereof. The defendant shall not be precluded, by reason of his default, from offering proof in mitigation of damages; * * *"

"Rule 10. Notice of Hearing. Such notice with acknowledgment or proof of service shall be filed with the Clerk of this Court on or before Wednesday next preceding the motion day fixed for the hearing. Such notice of hearing shall be in substantially the following form, with the file number and all other data correctly entered thereon by the attorney filing the same:

" 'In the District Court for the Territory of Alaska, Third Division.

" '———, Plaintiff, vs. ———, Defendant. Notice of Hearing.

" 'To ——— Attorney for the above named ———. You are hereby notified that on Saturday, the ——— day of ———, 19—, at the Court room of the above-named Court at ———, Alaska, the issue in the above-entitled action raised by ——— will be brought on for ———

" 'Attorney for ———

" 'Service by receipt of copy of the above notice hereby acknowledged this ——— day of ———.

" 'Attorney for ———.' "

"Rule 11. Defaults. A party may respond to any pleading at any time before a default is claimed. A default shall be deemed claimed whenever a motion therefor is filed claiming such default. Where such default is based upon facts appearing in the record and files of said cause no affidavit shall be required in support of the motion therefor. Default will not be granted against a party who has appeared in the action until the motion and affidavits have been served upon him or his attorney, and notice given for hearing in the regular way.

"Rule 27. Time to plead. Unless some definite time is fixed by statute or special order or rule of Court, a party against whom a pleading is filed must respond thereto by reply or other pleading within five days from the time the same is served on him or service waived by him. When parties or attorneys reside in different places and it is necessary to make service by mail, the five-day period herein given shall be deemed in addition to the time prescribed by Sections 1329 and 1330, Compiled Laws of Alaska, 1913."

It will be noted in section 3455 that the court is required to permit pleading over after a demurrer has been "interposed in good faith" and .overruled, *"upon such terms as may be proper."* In section 3457 we find the language, "the court may likewise, in its discretion *and upon such terms as may be just,"* allow an answer or reply to be made or any other act to be done after the time limited by the Code. And in section 3461 the court is commanded by the law to disregard any error or defect in the pleadings or proceedings "which shall not affect the substantial rights of the adverse party."

Altogether it is evident that the court should so exercise its authority to give to every litigant a fair hearing and a just determination of the cause, without undue regard for mistakes or omissions or errors, having in mind at all times the preservation of the substantial rights of all of the parties.

The plaintiffs were entitled to claim default against the defendants and each of them at the time the motion for such default was filed on July 28, 1945. Rule 11 of this court authorizes a party to respond to any pleading at any time before a default is "claimed." Plainly the filing of answers after the default in this case was claimed can be of no avail to defendants in the absence of authority from the court to file such answers. In view of the fact that the court is not only authorized but virtually commanded to impose "such terms as may be just" before allowing an answer to be made after the time limited by law, it is necessary to examine the answers so filed after the default in this case was claimed to determine whether, as a condition for not granting the default and permitting defendants to answer, terms should be imposed, and, if so, what terms. In the answers so filed without leave of the court the defendants admitted some of the allegations of the complaint but have denied others, and as to still others, namely, paragraphs 4, 5, 6 and 7 of the first cause of action of the complaint, the defendants alleged that "not having sufficient knowledge or information regarding the matters and things set forth" in said paragraphs they deny "each and all of the allegations contained in said paragraphs."

The first paragraph of plaintiffs' first cause of action set forth in the complaint which is denied by the defendants in their several answers is paragraph 3. This paragraph recites the construction and operation of the Alaska Railroad by the United States of America under authority of a certain act of Congress. The paragraph is substantially the same as paragraph 4 of the findings of fact made and entered by the District Court on January 4, 1940, in cause No. A–1053 wherein Berger was plaintiff and Ohlson and others defendants, as shown by the two paragraphs quoted below in parallel columns:

584

Paragraph 3 of complaint in this action:

"That by authority of said Act of Congress approved March 12, [1914] 1941, (38 Stat. 305 [48 U. S.C.A. §§ 301–308]), a railroad, known as 'The Alaska Railroad,' was constructed in said Territory of Alaska, and on the 25th day of May, 1938, and ever since, was, and is now being operated by the United States of America under authority of said Act."

Paragraph 4 of findings of fact in cause No. A–1053:

"That The Alaska Railroad was constructed and at all the times mentioned in the amended complaint filed herein was operated by the United States of America under authority of the Act of Congress approved March 12, 1914, (38 Stat. 305; Secs. 301–[308] 318, title 48, U.S.C.A.)"

In their several answers defendants have denied paragraph 4 of plaintiffs' first cause of action for lack of knowledge or information. Paragraph 4 of the first cause of action is identical with paragraph 6 of the findings of fact in cause No. A–1053, as indicated by the following parallel:

Paragraph 4 of complaint in this action:

"The President was by said Act of Congress further authorized ' * * * to withdraw, locate, and dispose of, under such rules and regulations as he may prescribe, such area or areas of public domain along the line or lines of such proposed railroad * * * for townsite purposes as he may from time to time designate.' "

Paragraph 6 of findings of fact in cause No. A–1053:

"The President was by said Act of Congress further authorized ' * * * to withdraw, locate and dispose of, under such rules and regulations as he may prescribe, such area or areas of public domain along the line or lines of such proposed railroad * * * for townsite purposes as he may from time to time designate.' "

Defendants in like manner deny, for lack of knowledge or information, paragraph 5 of plaintiffs' first cause of ac-

tion despite the fact that paragraph 5 is virtually identical with paragraph 7 of the findings of fact in cause No. A–1053, as indicated by the following parallel:

Paragraph 5 of complaint in this action:

"By said Act of Congress it was also provided that 'Terminal and station grounds and rights-of-way through the lands of the United States in the Territory of Alaska are granted for the construction of railroads "Authorized by said Act of Congress" * * * and the President may, in such manner as he deems advisable, make reservations of such lands as are or may be useful for * * * terminals, docks, and for such other purposes in connection with the construction and operation of such railroad lines as he may deem necessary and desirable * * *', and the President was finally authorized 'through such officers, agents or agencies as he may appoint or employ to do all the necessary acts and things in addition to those specially authorized in such sections (Sections 301 to 308, Title 48 U.S. C.A.) to enable him to accomplish the purposes and objects of such sections.' "

Paragraph 7 of findings of fact in cause No. A–1053:

"By said Act of Congress it is also provided that 'Terminal and station grounds and rights of way through the lands of the United States in the Territory of Alaska are granted for the construction of railroads "authorized by said Act of Congress," * * * and the President may, in such manner as he deems advisable, make reservations of such lands as are or may be useful for * * * terminals, docks, and for such other purposes in connection with the construction and operation of such railroad lines as he may deem necessary and desirable.' And the President was finally authorized 'through such officers, agents, or agencies as he may appoint or employ, to do all necessary acts and things in addition to those specially authorized in such sections (Secs. 301–308 of said Act of Congress) to enable him to accomplish the purposes and objects of such sections.' "

In like manner defendants deny, for lack of knowledge or information, paragraph 6 of the first cause of action although paragraph 6 is identical with paragraph 8 of the findings of fact in cause No. A–1053, as indicated by the following parallel:

Paragraph 6 of complaint in this action:

"That by virtue of an Act of Congress approved June 4, 1897, (30 Stat. 11, 34–36 [16 U.S.C.A. § 475 et seq.]) entitled 'An Act making appropriations for sundry civil expenses of the Government for the fiscal year ending June 30, 1898, and for other purposes,' [16 U.S.C.A. § 475 et seq.] Theodore Roosevelt, President of the United States of America, by proclamation duly made and published, enlarged the boundaries of the Chugach National Forest theretofore set apart and reserved by proclamation under like authority of Congress so as to include therein all of the present town of Anchorage, Third Division, Territory of Alaska, and all of the lands hereinafter described and referred to; and the same was thereby set aside and apart from the public domain and thereby reserved from occupation."

Paragraph 8 of findings of fact in cause No. A–1053:

"That by virtue of an Act of Congress approved June 4, 1897 (30 Stat. 11, 34–36 [16 U.S.C.A. § 475 et seq.]) entitled 'An Act making appropriations for sundry civil expenses of the Government for the fiscal year ending June 30, 1898, and for other purposes,' Theodore Roosevelt, President of the United States of America, by proclamation dated February 23, 1909, duly made and published, enlarged the boundaries of the Chugach National Forest theretofore set apart and reserved by proclamation under like authority of Congress so as to include therein all of the present town of Anchorage, Third Division, Territory of Alaska, and all of the lands included and described in the plaintiff's amended complaint herein; and the same was thereby set aside and apart from the public domain and thereby reserved from occupation."

Defendants in like manner deny, for lack of knowledge or information, paragraph 7 of the first cause of action although said paragraph is in all material respects the same as paragraph 9 of the findings of fact in cause No. A–1053, as indicated by the following parallel:

Paragraph 7 of complaint in this action:

"That all of said lands remained so set aside and apart from public domain and were thereby reserved from occupation until after the passage of the Act of Congress of March 12, 1914 (38 Stat. 305) when Woodrow Wilson, President of the United States of America, by Executive Order Number 2242 withdrew from the said Chugach National Forest and thereby withdrew them from settlement, location, sale, entry, or other disposition, which lands were and are described as follows:

" 'Beginning at the corner of Sections 7, 8, 17 and 18, T. 13 N., R. 3 W., Seward Meridian, thence East 39.95 chains to the true point for the quarter section corner on the south boundary of Section 8; thence North 0°05½' West 39.96 chains; thence West 99.96 chains along

Paragraph 9 of findings of fact in cause No. A–1053:

"That all of the lands described in plaintiff's complaint herein remained so set aside and apart from the public domain and were thereby reserved from occupation until after the passage of the Act of Congress of March 12, 1914 (38 Stat. 305) when Woodrow Wilson, President of the United States of America, by executive order Number 2242, dated August 31, 1915, withdrew from the said Chugach National Forest and thereby withdrew them from settlement, location, sale, entry, or other disposition, which lands were and are described as follows:

" 'Beginning at the corner of Sections 7, 8, 17 and 18, T. 13 N., R. 3 W., Seward Meridian, thence East 39.95 chains to the true point for the Quarter section corner on the south boundary of Section 8;

the quarter section line through Sections 8 and 7 to its intersection with ordinary high water mark on the east shore of Knik Arm; thence southwesterly along ordinary high water mark on the eastern shore of Knik Arm and crossing the mouth of Ship Creek to the northwest corner of Anchorage Townsite; thence East 89.06 chains; thence North 0°06′ West 14.26 chains to the point of beginning, containing 551.-63 acres.'

That in said Executive Order No. 2242 the same was known and called 'Alaska Railroad Terminal Reserve.' "

thence North 0°05½′ West 39.96 chains; thence West 99.96 chains along the quarter section line through Sections 8 and 7 to its intersection with ordinary high water mark on the east shore of Knik Arm; thence southwesterly along ordinary high water mark on the eastern shore of Knik Arm and crossing the mouth of Ship Creek to the northwest corner of Anchorage Townsite; thence East 89.06 chains; thence North 0°08′ West 14.26 chains to the point of beginning, containing 551.63 acres;'

That in said executive order No. 2242 the same was known and called 'Alaska Railroad Terminal Reserve.' "

Defendants deny without qualification paragraph 8 of the first cause of action although said paragraph is identical with paragraph 10 of the findings of fact in cause No. A–1053, as indicated by the following parallel:

Paragraph 6 of complaint in this action:

"That said above described lands have always heretofore been and at all

Paragraph 10 of findings of fact in cause No. A–1053:

"That said above described lands have always

the times mentioned herein, and now are reserved lands as above alleged, and are now and always heretofore have been the exclusive property of the United States of America, and not subject to settlement or acquisition in any manner but by express grant of the United States of America."

heretofore been and at all the times mentioned in the complaint herein, and now are reserved lands as above alleged, and are now and always heretofore have been the exclusive property of the United States of America, and not subject to settlement or acquisition in any manner but by express grant of the United States of America."

Defendants in like manner deny without qualification paragraph 9 of the first cause of action although said paragraph is in all material respects the same as the first part of paragraph 11 of the findings of fact in cause No. A–1053, as indicated by the following parallel:

Paragraph 9 of complaint in this action:

"That said defendants have never had and do not now have any right, title, or interest in or to any part of said 'Alaska Railroad Terminal Reserve.' "

Paragraph 11 of findings of fact in cause No. A–1053:

"That plaintiff never has had and does not now have any right, title nor interest in or to any part of said 'Alaska Railroad Terminal Reserve;' that the City of Anchorage, a municipal corporation, never has had and does not now have any right, title nor interest in or to any part of said 'Alaska Railroad Terminal Reserve.' * * * "

Defendants likewise deny without qualification paragraph 12 of the first cause of action although paragraph 12 is accurately based upon the opinion and decision of the Circuit Court of Appeals in cause No. A–1053. To deny paragraph 12 is to deny the validity of the decision of the Circuit Court of Appeals in cause No. A–1053.

The defendants' denials of the above mentioned paragraphs must be based upon a desire to litigate again matters which were litigated and determined by the District Court and, upon appeal, by the Circuit Court of Appeals, in cause No. A–1053. Justice will not be subserved by again undertaking the trial of issues which have already been fairly determined and affirmed upon appeal. All of the paragraphs mentioned might even be subject to a motion to strike upon the ground that such denials are sham and present no real issue to be tried. When a cause has once been fairly determined, and particularly if it has been affirmed upon appeal, a proposal to retry the same issues in another case is not in harmony with the fundamental rules of law and of justice.

Now it may be said that in cause No. A–1053 the Appellate Court simply affirmed the decree of this court and did not expressly approve each of the findings of fact and conclusions of law. But the decree so affirmed is necessarily based on the findings of fact and conclusions of law, and the findings of fact are, in turn, obviously based upon the averments of the defendants' answer in cause No. A–1053, and must have been supported by the proof. It may also be said that the defendants Wells, Ervin and McDonald were not parties to cause A–1053 and therefore are not bound by the findings of fact, conclusions of law and decree in that case. But any such view is not tenable. Wells, Ervin and McDonald were Berger's guarantors—virtually his partners—in cause No. A–1053, and equally with him they are bound by the decree and the decisions of fact and of law necessarily supporting the decree in that case.

The defendants in their several answers have also denied the allegations of paragraphs 13, 14, 20 and 22 of the first cause of action, but those denials have a different status. In paragraph 13 plaintiffs allege that plaintiff Cunningham, acting for and on behalf of the Alaska Railroad, demanded of defendant Berger wharfage charges for the cargo so moved by defendant Berger upon and over the City Dock. In paragraph 14 it is alleged that defendant Berger refused to make payment of such wharfage charges, whereupon plaintiff Cunningham sought to restrain the defendant from moving cargo over said City Dock. In paragraph 20 a statement is made of the cargo so moved by defendant Berger on and across the City Dock and that as a result thereof there is due to the plaintiffs wharfage charges in the amount of $5,627.02. In paragraph 22 it is alleged that by reason of the facts and circumstances stated in the first cause of action plaintiffs have been damaged in the sum of $5,627.02. These paragraphs and their denials by the defendants raise the only real issue herein involved, and defendants upon terms should be permitted to defend as to the sums so claimed to be due and the exact amount thereof. On that issue the conclusions of law found by the court in cause No. A–1053 are significant, as indicated by the provisions thereof below quoted:

"I. That the plaintiff had and has no right to use the roadway over the Alaska Railroad Terminal Reserve leading from the wharf in question to the Alaska Railroad right of way.

"II. That the defendants as employees of the Alaska Railroad are entitled to charge the equivalent of wharfage for use of uplands owned by the United States.

"III. That preliminary injunction heretofore made and entered herein be dissolved.

"IV. That the permanent injunction prayed for in plaintiff's amended complaint be refused."

Equally significant is the following from the judgment on the mandate entered in cause No. A–1053 on October 5, 1942:

592

" * * *  and, it further appearing to the court from said motion and the affidavit of Joseph W. Kehoe, attached thereto, and from the records and files herein that the defendants sustained damages during the pendency of this action and while said temporary injunction remained in full force and effect, on account of the landing, by the plaintiff, of freight on the terminal reserve of the Alaska Railroad, at Anchorage, Alaska, between the 22nd day of June, 1938, and the 6th day of May, 1940,  * * *  Ordered, Adjudged and Decreed, that the defendants have and recover of plaintiff all their costs and disbursements of action, and that the claim of the defendants herein for damages be denied, without prejudice, however, to the right of said defendants to recover by separate action all such sums and amounts by way of damages or otherwise as they may by law be entitled to on account of the issuance of said temporary injunction."

It may conceivably be shown by proof that the amount actually due for the wharfage charges or damages claimed is not $5,627.02, but some other and less sum, or nothing. In this connection it should be borne in mind that the Circuit Court of Appeals on the appeal heretofore taken in this action has explicitly upheld the sufficiency of the pleading embraced in the plaintiffs' first cause of action, in the following language:

"The defendants demurred to the first cause of action, which the court overruled. We hold that the first cause of action pleaded facts which, if proved, are sufficient to sustain a judgment and that the demurrer was properly overruled."

The defendants are clearly in default, but despite the default they should be permitted to defend upon any real issue that can be brought before the court by proper pleading. Therefore, acting under the mandate of the law to disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party, and the further implicit mandate to forgive a

default only "upon such terms as may be just," the order here will be:

(1) That the defendants' several answers interposed after default was claimed, on August 1 and August 3, 1945, be stricken;

(2) That defendants and each of them be permitted, within 5 days from the date hereof, to answer plaintiffs' complaint by denying, if they see fit to do so, the averments of paragraphs 13, 14, 20 and 22 of the first cause of action and by admitting, either expressly or by failure to deny, all other paragraphs of the first cause of action;

(3) That if the defendants' answers, in harmony with the views herein expressed, and in proper form, are filed within 5 days from the date hereof, the plaintiffs' motion for default will be denied and the cause will proceed to trial upon the issues thus raised. Otherwise the plaintiffs' motion for default will be granted and the court will proceed to take proof upon the amount due from defendants to plaintiffs and give judgment accordingly.

Formal order may be prepared and submitted for entry as of today.